Citation Nr: 1126163 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 99-20 872 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio

THE ISSUES

1. Entitlement to restoration of a 20 percent rating for a neurological disability of the right lower extremity, previously classified as spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, currently rated at 10 percent disabling.

2. Entitlement to an evaluation in excess of 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity,


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Fussell, Counsel


INTRODUCTION

The Veteran served on active duty from July 1967 to July 1971 and from September 1974 to September 1984. He had active service in the Republic of Vietnam.

This appeal arises before the Board of Veterans' Appeals (Board) from a December 1998 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. Historically, in an April 1985 rating decision, the RO granted the Veteran's claim for service connection for cerebral arteriovenous (AV) malformation of the brain, with secondary spastic hemiparesis and minor focal seizures of the right side. This condition, as characterized, was initially rated as one disability and was assigned a 30 percent rating, effective from September 28, 1984 (day after service discharge). In a December 1998 rating decision, the RO re-characterized the Veteran's cerebral AV malformation disability as five distinct disabilities: (1) impaired praxis of the right hand (major) with decreased sensation of the upper right extremity; (2) right homonymous hemianopsia; (3) a spastic right lower extremity; (4) hypalgesia of the right side of the face; and (5) a focal seizure disorder, all of which stemmed from the cerebral AV malformation, and with each assigned a separate rating, effective from December 22, 1997 (the date of receipt of the claim for increase). The separate 20 percent rating for a spastic right lower extremity was assigned pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8520, for moderate incomplete paralysis of the sciatic nerve, effective from December 22, 1997. The Veteran subsequently disagreed, in relevant part, with that separate 20 percent rating and perfect this appeal. (See Notice of Disagreement, dated February 1999; Statement of the Case, dated July 1999; and Substantive Appeal (VA Form 9), dated September 1999).

The Veteran testified at an RO hearing in December 2003 and a transcript of that hearing is on file. He also testified at a hearing conducted at the local VA office before the undersigned Veterans Law Judge in September 2004 and a copy of that transcript is also on file. 

The extensive procedural history of this case will not be set forth in detail because this has been done in the Board remands in March 2001 and December 2004 as well as the Board decisions and remands of October 2008 and August 2010.

In October 2008, the Board entered a decision that granted, in part, service connection for peripheral neuropathy of the lower extremities due to in-service herbicide exposure, and remanded, in part, the issue concerning an evaluation in excess of 20 percent for a spastic right lower extremity for additional development.

The RO implemented the October 2008 Board decision in an August 2009 rating decision. In so doing, the RO awarded service connection for peripheral neuropathy of the right and left lower extremities, with each extremity evaluated as 10 percent disabling, effective from December 22, 1997, pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8520 (mild sciatic neuropathy). Also, by that August 2009 rating action, the RO apparently discontinued the 20 percent rating for, as well as the classification of, a spastic right lower extremity, and, in effect, re-classified the neurological disability of the right lower extremity as peripheral neuropathy of the right lower extremity, now evaluated as 10 percent disabling, effective from December 22, 1997, under 38 C.F.R. § 4.124a, Diagnostic Code 8520 (mild sciatic neuropathy).

The grant of service connection for peripheral neuropathy of the left lower extremity is a complete grant of that benefit sought on appeal and is no longer before the Board. As there is no jurisdiction conferring Notice of Disagreement (NOD) contesting the downstream elements of the effective date or compensation level assigned for the left lower extremity, no such issues are now in appellate status. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997).

In pertinent part, the August 2010 Board decision denied service connection for a lumbosacral disability, including degenerative disc disease (DDD), to include as secondary to service-connected disability of the right lower extremity. 

The Veteran did not initiate an appeal as to the rating assigned or the effective date of a grant of service-connection for ischemic heart disease by a November 2010 rating decision. Thus no such issues are in appellate status. Grantham, 114 F.3d 1156 (Fed. Cir. 1997). That rating decision also granted special monthly compensation based on being housebound and also granted basic eligibility for Dependents' Educations Assistance (DEA) benefits.

Accordingly, the only issues that remain on appeal are those listed on the cover page of this decision.


FINDINGS OF FACT

1. The service-connected neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, and now classified as peripheral neuropathy of the right lower extremity, did not undergo an improvement.

2. Since December 22, 1997, the service-connected a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, and now classified as peripheral neuropathy of the right lower extremity, has not been productive of more than moderate impairment of the sciatic nerve.


CONCLUSIONS OF LAW

1. The reduction of the assigned 20 percent rating for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, was improper; and restoration of a 20 percent rating for such disability, effective from December 22, 1997, is warranted. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.105(e), 3.344 (2010).

2. The criteria for an evaluation in excess of 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, at least for the period from December 22, 1997, are not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.6, 4.7, 4.120, 4.123, 4.124, 4.124a, Diagnostic Code 8520 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA's duties to notify and to assist claimants in substantiating VA claims. See 38 U.S.C.A. §§ 5103, 5103A and 38 C.F.R § 3.159.

As to the claims for restoration and an evaluation in excess of 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, the appeal arises from a December 1998 rating decision, which assigned a separate 20 percent for such disability, based on neurological impairment associated with the service-connected cerebral AV malformation. During the pendency of this appeal, an August 2009 rating decision re-classified such neurological disability as peripheral neuropathy of the right lower extremity (see, e.g., 38 C.F.R. § 4.14 (2010) (avoidance of pyramiding)), and assigned a 10 percent rating, effective from December 22, 1997. The Veteran was informed in a November 2010 Supplemental Statement of the Case that this reduction did not change the combined rating for his service-connected disabilities. As such, no letter advised the Veteran of his due process rights concerning the reduction; however, the lack of such notice is not prejudicial to the Veteran as the decision below favorably finds that the reduction was improper and restores the Veteran's 20 percent rating for such neurological disability, now classified as peripheral neuropathy of the right lower extremity.

The Veteran's actions are indicative of his actual knowledge of the requirements for substantiating his claims. He presented testimony to the RO and to the undersigned Veterans Law Judge regarding his neurological symptoms of the right lower extremity and he reported his symptoms and their effects on his daily activities to VA examiners. Based on this information and evidence, the Board is satisfied that the Veteran had actual knowledge of what was necessary to substantiate his increased rating claim. See Dalton v. Nicholson, 21 Vet. App. 23, 30-31 (2007) (actual knowledge is established by statements or actions by the claimant or the claimant's representative that demonstrate an awareness of what is necessary to substantiate the claim).

Accordingly, the Board finds that no prejudice to the Veteran will result from the adjudication of his claims in this Board decision. Rather, remanding this case back to the RO for further VCAA development would be an essentially redundant exercise and would result only in additional delay with no benefit to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1994).

All relevant evidence necessary for an equitable resolution of the issues on appeal has been identified and obtained, to the extent possible. The evidence of record includes private medical records, VA outpatient records, VA examination reports and statements and testimony from the Veteran and his representative. The Veteran has not indicated that he has any further evidence to submit to VA, or which VA needs to obtain. There is no indication that there exists any additional evidence that has a bearing on this case that has not been obtained. The Veteran and his representative have been accorded ample opportunity to present evidence and argument in support of this appeal. Thus, the Board finds that VA has obtained, or made reasonable efforts to obtain, all evidence that might be relevant to the issues on appeal, and that VA has satisfied the duty to assist. All pertinent due process requirements have been met. See 38 C.F.R. § 3.103(2010).

There was some confusion as to the past and the current rating assigned for the service-connected right lower extremity disorder and this was the basis of the August 2010 Board remand of the issue. However, as will be explained in greater detail below, this matter was clarified in the November 2010 Supplemental Statement of the Case. Accordingly, the Board concludes that there has been compliance with the August 2010 Board remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders). 

Factual Background

A January 1985 EMG found no evidence of lumbar radiculopathy. 

On VA examination in 1985, it was reported that he had developed spasms in this right foot in 1981 (during service), and that after an evaluation, it had been found that he had an AV malformation in the brain, for which he was placed on Dilantin. He still had spasms of lesser severity, but which were mostly continuous and consisted of hardly more than a cramp in his foot. There was no significant sensory loss or other symptoms that he was aware of. On examination he had a stocking hypalgesia extending to the mid-calf with loss of proprioception at the great toe. There was no loss of muscular development or power in the right lower limb and reflexes were 1+ at the knee and ankle. Plantar responses were flexor. Coordination was normal in the lower extremities. His gait was normal. The diagnosis was a history of an AV malformation, cerebral, with minor focal seizures resulting therefrom. There was minor impairment of "sensory motor" function in the right hand and foot. 

On VA general medical examination in September 1998, the Veteran's gait was normal. He had problems with his legs giving out. 

On VA psychiatric examination in September 1998, the Veteran reported that he used a cane because he sometimes had pain in his right foot. 

On VA peripheral nerve examination in October 1998, the Veteran reported that since 1984 he had had seizures manifested by pain in the right side, primarily in the right leg, associated with involuntary movement. These episodes had "not generalized" but occurred daily and had not responded to anti-convulsive medication. On examination, the Veteran tried to minimalize his problems. The right side of his body showed less spontaneous movement, compared to the left. There was no swelling or edema of the right lower extremity. Muscle tone in the right lower extremity was increased, compared to the left. As to his right foot, strength of knee flexion and extension and hip flexion and extension were normal on the right, compared to the left. But, foot-tapping was appreciably slower and dysrhythmic on the right side, compared to the left. There was decreased appreciation of sharp/dull touch and vibration in the right foot and leg, compared to the left. He also had right impaired "somatotopangosia", that is he did not know well where his right sided body part were in space. With his eyes closed, heel-to-shin was clumsy with the right leg, compared to the left. Reflexes were brisker on the right side, compared to the left. This was in concert with the increased tone of the right lower extremity. He had an up-going toe on the right side with "Chaddock" maneuver. Both toes showed prominent withdrawal to traditional Babinski testing. His gait showed external rotation and mild foot drop of the right leg. The impression was residual spastic hemiparesis and right sensory loss which had progressed slightly, compared to examination in 1984 and 1985. In 1985 his reflexes had been symmetric and he had only stocking hypalgesia of the right foot but he now had sensory loss which had extended to involve the right side of the face, and the trunk as well as the right upper and lower extremities. Thus, it was believed that there had been some progression of the spastic right hemiparesis with the most prominent deficits being, in part, movements of the right lower extremity in activities such as walking quickly. 

In January 2002, the Veteran underwent a partial hemilaminectomy and discectomy at L5-S1 on the left, at a private medical facility. 

A January 2003 report from Dr. B. C. I. reflects that the Veteran had weakness of the right lower extremity, compared to the left. He had right foot drop. He complained of pain in his right foot as well as weakness, slight stiffness, some redness, and fatigability. He reported having these symptoms while standing and walking. He had daily right foot pain which he estimated to be 1 or 2 on a scale of 10, but with flare-ups it could get as high at 8 and such flare-ups occurred 1 or 2 times monthly and lasted until he stopped any activity. His flare-ups were associated with cramping of the right foot. His flare-ups were precipitated by concentrating or when under increased stress. He wore a leg brace, which helped control the cramping in his foot but did not report having daily twitching. He reported that since getting a foot brace, his right foot cramps had decreased by once or twice a month. He was not taking any anti-convulsant medication. On examination he walked with a slightly limping gait with the right foot externally rotated. He had a right leg brace in place. On removal of the brace, he had hair loss to about 20 cms. above the ankle joint but the right foot was warm and dry. He had decreased sensation to pin prick from the ankle all the way to the tibial plateau. He had full range of motion of the right ankle, with dorsiflexion to 20 degrees, plantar flexion to 40 degrees, inversion to 30 degrees, and eversion to 20 degrees. There was decreased right ankle jerk but right patella reflex was 3+. Strength was 5/5 in both lower extremities. He had a slight right foot drop. The assessments included right foot focal seizure disorder and spastic right lower extremity secondary to cerebral AV malformation.

At the December 2003 RO hearing, the Veteran testified to the effect that he had injured his low back during service and that he had had low back surgery in January 2002. Pages 2 and 5 of that transcript. 

At the September 2004 Travel Board hearing, the Veteran testified that he sometimes had what had been called "seizures" in his foot which sometimes extended up to the calf. Page 6 of that transcript. He had been given Darvocet for foot pain. He had tried a leg brace, a cane, and crutches but they had not been helpful. Page 7. He had the "seizures" once or twice a week. Page 8. He had experienced foot drop. Page 9. The pain in his foot had become better since he had used a hinged-leg brace and, so, now only had night-time spasms in his foot on an average of about once weekly, whereas they had occurred two or three times nightly. He did not wear the leg brace at night and if awoken at night he could go to the bathroom without using the leg brace. He also used a cane. Page 10. Because of the right leg disability he could no longer mow grass and he could not take long walks with his family. He could only walk about 100 yards without having any problems. Page 11. Also, he could no longer fish or hunt. Page 12. 

A May 2005 VA EMG and nerve conduction studies revealed the peroneal nerves in both legs were normal, but there was mild sensory peripheral neuropathy and no evidence of lumbosacral radiculopathy. 

On VA peripheral nerve examination in May 2005, it was noted that the Veteran used a right foot drop brace. He complained of numbness, tingling, and pain, as well as leg twitching when he layed down. On examination, he had good peripheral pulses. Patellar and Achilles reflexes were hyperactive on the right. Right ankle dorsiflexion was to zero (0) degrees and plantar flexion was to 15 degrees. He had an absence of both light and sharp touch sensations of the right leg. He walked with a limp, favoring his right side and sometimes staggered when walking. The impressions included bilateral mild sensory peripheral neuropathy of unknown etiology, unlikely related to his service-connected AV malformation. It was purely speculation to relate the recent development of peripheral neuropathy to his service-connected disabilities or inservice herbicide exposure, "although without another etiology, it is at least as likely a possibility." 

On VA spinal examination in May 2005, the Veteran had a slight limp, favoring the right leg, and he staggered slightly with walking. He had decreased sensation to light touch and sharp touch sensation in the entire "left" lower leg. His reflexes were absent in the lower extremities on the left and hyperactive on the right. The impressions included spastic right lower extremity. 

On VA examination of the Veteran's back on January 12, 2010, it was reported that the Veteran had had low back surgery first in January 2002 and again in June 2002. He had been having right lower extremity weakness since these surgeries. He wore an "AFO" on the right side. He had partial right foot drop on the right. He complained of numbness and tingling of the right side of his body. On examination strength of the "right dorsal dorsiflexors" was about 4-/5. Knee jerks were 2+, bilaterally, but right ankle jerk was absent. Plantar reflexes were normal. There was no Babinski. There was decreased sensation to pinprick and light touch in the right lower extremity, in that he reported that he could feel it but not as good as on the left side. He had an abnormal gait. He reported that he had left his cane in his vehicle but he walked with an "AFO" brace on the right side and dragged his right lower extremity. There was no spasticity or abnormal movement. There were no chorea or choreiform movements. The pertinent diagnosis was hyperesthesia of the right lower extremity and spasms of the lower extremity which could be partial seizures. There was no history of generalized seizures or headaches. 

On VA examination of the Veteran's back on January 20, 2010, the Veteran reported that he could not walk more than 50 yards. On examination his gait pattern was a slight limp, favoring the right leg/foot without overt antalgia or ataxia. There appeared to be a slight lag involving the right foot. He was wearing a molded support on the right foot and lower leg. Strength on right hip and knee flexion and extension was 5/5. Strength of the right ankle on plantar flexion was 5/5 but it was 4/5 on dorsiflexion. Strength of the deep peroneal nerve, as measured by great toe extension, was 5/5 on the right. It was commented that there was decreased strength involving the right foot and ankle in dorsiflexion, most likely affecting the peroneal nerve. Muscle tone was normal and there was no muscle atrophy. There was a decreased to absent response to light tactile touch involving the right lower extremity from the level of the knee to the foot. There was an absence of sensation to monofilament for the same. There seemed to be a variable response to 2-point sharp-dull discrimination on the right. Vibratory sensation in the 4th and 5th toes as well as at the medial aspect of the right ankle was normal but otherwise there was no perception of vibration. Position sense of the right great toe and Babinski testing was normal. Knee jerk was 3+ on the right but right ankle jerk was absent. Babinski testing of plantar flexion was normal. 

On VA peripheral nerve examination on January 20, 2010, the Veteran's claim file was reviewed and it was noted that in December 1999 the Veteran reported that he had an old hinged "AFO" brace which he wanted replaced. A metal "AFO" brace had been fabricated and dispensed in July 2009 but he was unhappy with it and it had ulcerated the medial aspect of the right ankle and he felt that it did not support his foot drop as much as the plastic hinged device had. On examination dorsalis pedis and posterior tibial pulses were 1/4 in the right foot. There was no edema. Protective sensation was absent at all sites. Vibratory sensation was diminished at the right hallux (great toe), but intact at the medial malleolus. There were no open lesions or macerations. A prior sore of the medial aspect of the right ankle was fully epithelialized and there was no evidence of bacterial infection, and this coincided with the medial stem of the "AFP" brace. Digital contractures of the toes of the right foot were rigid. There was onychomycosis of the nails of all toes of the right foot. There was right foot drop. The December 1999 assessments included hammertoe deformity on the right, right foot drop, and right lower extremity peripheral neuropathy. 

On the current January 2010 examination, the Veteran had decreased to absent response to light touch of the right lower extremity from the level of the knee to the foot. There was an absence of sensation to monofilament for the same. There seemed to be a variable response to 2-point sharp/dull discrimination on the right. There was normal vibratory sense I the 4th and 5th toes as well as at the medial ankle and the shin. Otherwise, there was no perception of vibration. Position sense in the great toe and Babinski's were normal in testing. Right knee reflex was 3+ but right ankle jerk was absent. There was no muscle atrophy and no abnormal muscle tone or bulk. There were no tremors, tics, or other abnormal movements. There was no affect on function of any joints due to a nerve disorder. His gait and balance, however, were not normal. He had a slight limp, favoring the right leg and foot without overt antalgia or ataxia. There appeared to be a slight lag involving the right foot. He was able to rise up on his heels and his toes minimally but with poor balance and he could perform a half squat toward the floor. He had bilateral hallux deformities. It was noted that the sensory examination of the right lower extremity was seemingly a glove-like loss to sensation due to a variety of stimuli. Dorsalis pedis and posterior tibial pulses were 2+. It was noted that the Veteran had retired in 2001. The diagnosis was right lower extremity neuropathy with right foot pain. As to the severity of the service-connected right spastic lower extremity, the examiner stated that there did not appear to by any significant paralysis involving the right lower extremity and foot. Additionally, there was no evidence to support significant right foot drop, such as dangling or significantly impaired gait. The examination showed only some loss of strength in the right foot and ankle in dorsiflexion against resistance. Otherwise, there did not appear to be marked muscular atrophy or wasting in of the right leg and the right lower extremity spasticity was mild in severity. 

Analysis

A. Procedural History

In August 2010, the Board remanded the issue of an evaluation in excess of 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, to clarify the rating history of that disorder. Subsequently, a November 2010 rating decision indicated that the right lower extremity disability was evaluated as 10 percent disabling. In a November 2010 Supplemental Statement of the Case (SSOC), the RO noted in the reasons and bases that effective from December 22, 1997, peripheral neuropathy was evaluated as 10 percent for each lower extremity (as assigned by the August 2009 rating decision). The RO noted that this action resulted in no change in the combined evaluation, and was based on the Board of Veteran's Appeals decision dated "October 16, 2006" [actually 2008] and the level of impairment shown. However, the decision portion of that SSOC reflects that the holding was that entitlement to an evaluation greater than "20" percent for a neurological disability of the right lower extremity is not established. 

Nevertheless, it is clear that the August 2009 rating decision effectuated the October 2008 Board decision. As indicated above, the RO established service connection for peripheral neuropathy of the left lower extremity and service connection for peripheral neuropathy of the right lower extremity, and each lower extremity was assigned an initial 10 percent disability rating, effective from December 22, 1997, under 38 C.F.R. § 4.124a, Diagnostic Code 8520, for "mild" incomplete paralysis of the sciatic nerve. This rating action did not result in a change in the combined disability evaluation of 80 percent. 

In substance, the August 2009 rating action reduced the 20 percent rating for the service-connected neurological disability of the right lower extremity (formerly classified as spastic right lower extremity) to 10 percent as of December 22, 1997, and re-classified that disability as peripheral neuropathy of the right lower extremity. See 38 C.F.R. § 4.14. In so doing, the August 2009 rating action substituted a 10 percent rating in place of the 20 percent rating under Diagnostic Code 8520, and did not formally find that there had been any improvement in the overall impairment due to neurologic signs and symptoms in the right lower extremity; but it did indicate that the right lower extremity disability was only "mild."

The RO has indicated that the reduction of the 20 percent rating for spastic right lower extremity was done pursuant to the October 2008 Board decision. This is incorrect. The original grant of service connection for spastic right lower extremity, as reflected in the April 1985 rating decision, was based on a finding that it was due to an AV cerebral malformation; whereas, the original grant of service connection for peripheral neuropathy of "each" lower extremity was made on the basis of in-service herbicide exposure. Moreover, nothing in the 2008 Board decision contained instructions on how the RO was to evaluate the peripheral neuropathy of each lower extremity, a part from requesting additional development by way of a new VA examination for rating purposes.

Accordingly, it is clear that the Veteran seeks restoration of the 20 percent disability rating for the neurological disorder of the right lower extremity, previously classified as spastic right lower extremity, and now classified as peripheral neuropathy, currently rated at 10 percent disabling, to include whether an increased rating is warranted for such disability.

B. Reduction in Rating

For the time from the assignment of a separate 20 percent rating for spastic right lower extremity (for moderate incomplete paralysis of the sciatic nerve) until the rating action of August 2009, which reduced the rating to 10 percent (for mild incomplete paralysis of the sciatic nerve), a period of more than 5 years had elapsed.

Pursuant to 38 C.F.R. § 3.105(e) where a reduction in the evaluation of a service-connected disability is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefore, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. Final rating action will reduce or discontinue the compensation effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. 38 C.F.R. § 3.105(e).

In this case, the August 2009 rating action, in effect, reduced the 20 percent rating for the service-connected neurological disability of the right lower extremity to 10 percent disabling, retroactively to the assignment of that 20 percent rating on December 22, 1997. The August 2009 rating decision also granted service connection for and assigned an initial 10 percent rating for peripheral neuropathy of the left lower extremity, effective fro m December 22, 1997. The Veteran's combined evaluation for compensation at this time remained the same at 80 percent, as was previously assigned. Accordingly, as the August 2009 reduction of the disability rating for a neurological disability of the right lower extremity, previously classified as spastic right lower extremity, and now classified as peripheral neuropathy of the right lower extremity, did not result in a reduction or discontinuance of compensation payments currently being made, the requirements of 38 C.F.R. § 3.105(e) are not for application in this case.

In considering the reduction of the Veteran's 20 percent schedular rating for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity (now classified as peripheral neuropathy of the right lower extremity), there are special protections afforded by 38 C.F.R. §§ 3.343 and 3.344.

With respect to the special protections afforded for total disability ratings, 38 C.F.R. § 3.343, provides that total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of record, and consideration must be given particularly to whether a veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms had been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and, if the latter, reduction from total disability ratings will not be considered pending reexamination after a period of employment (3 to 6 months). 38 C.F.R. § 3.343(a) (2010). Accordingly, pursuant to 38 C.F.R. § 3.343(a), the 100 percent schedular rating will not be reduced without examination showing "material improvement" in the Veteran's condition. Hence, 38 C.F.R. § 3.343 is inapplicable in this case as there has been no reduction of a total disability rating in the current appeal. 

Under 38 C.F.R. § 3.344, rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. It is essential that the entire record of examination and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history. Examinations which are less thorough than those on which payments were originally based will not be used as a basis for reduction. Ratings for diseases subject to temporary or episodic improvement will not be reduced on the basis of any one examination, except in those instances where all of the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. Moreover, where material improvement in the physical or mental condition is clearly reflected, the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344 (a) (2010).

However, 38 C.F.R. § 3.344(c) specifies that the above considerations are required for ratings which have continued for long periods at the same level (five years or more); they do not apply to disabilities which have not become stabilized and are likely to improve. Therefore, reexaminations disclosing improvement, physical or mental, in these disabilities will warrant a reduction in rating. Id. 

As a period of 5 years had elapsed from the time of the assignment of a separate 20 percent rating for spastic right lower extremity, until the rating action of August 2009, which reduced the rating to 10 percent, the provisions of 38 C.F.R. § 3.344 apply in this case. The Board finds, however, that there was no evidence of material improvement at the time of the August 2009 rating decision. Specifically, while the 2005 EMG found mild sensory peripheral neuropathy, the May 2005 VA peripheral nerve examination found hyperactive reflexes of the right lower extremity and decreased sensation of the right leg and decreased range of motion of the right ankle, accounting for the Veteran's limp. While the diagnosis was mild sensory peripheral neuropathy, there was evidence that the Veteran continued to have spasm in the right lower extremity. Moreover, the 2003 report of Dr. B.C.I. indicated that the Veteran had weakness of the right lower extremity. Thus, there was evidence of both motor and sensory abnormalities in the right lower extremity.

Based on these clinical findings, the reduction by the August 2009 rating decision, from a 20 percent rating for moderate neurological impairment under Diagnostic Code 8520, to a 10 percent for mild neurological impairment under that same diagnostic code, was not justified. After a review of the evidence the Board finds that there was no sustained or material improvement in the service-connected neurological disability of the right lower extremity, now classified as peripheral neuropathy of the right lower extremity (formerly spastic right lower extremity), and thus the reduction to a 10 percent rating by the August 2009 rating action was improper. Accordingly, the Board determines that the preponderance of the evidence does not support the reduction in the Veteran's disability evaluation from 20 to 10 percent, and thus the Veteran is entitled to restoration of the 20 percent rating for his neurological disability of the right lower extremity (which has been re-classified as peripheral neuropathy of the right lower extremity).

In any event, where, as in this case, VA has reduced a Veteran's rating without observing applicable laws and regulation, such a rating is void ab initio and the Court will set it aside as not in accordance with the law. Kitchens v. Brown, 7 Vet. App. 320, 325 (1995). Where a rating reduction was made without observance of law, the reduction must be vacated and the prior rating restored. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Accordingly, the 20 percent rating for the Veteran's neurological disability of the right lower extremity, previously classified as spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, is restored, effective from December 22, 1997.

C. Rating in Excess of 20 percent

Ratings for a service-connected disability are determined by comparing current symptoms with criteria set forth in VA's Schedule for Rating Disabilities, which is based as far as practical on average impairment in earning capacity. Separate diagnostic codes (DCs) identify the various disabilities. 38 U.S.C.A. § 1155. Disabilities are viewed, and examinations are interpreted, historically, in order to accurately reflect the elements of disability present. 38 C.F.R. § 4.1, 4.2. A higher rating is assigned if it more nearly approximates such rating. See 38 C.F.R. §§ 4.7, 4.21. 

Peripheral neuropathy which is wholly sensory is mild or, at most, moderate. With dull and intermittent pain in a typical nerve distribution, it is at most moderate. The maximum rating when not manifested by organic changes is for moderate impairment or, if of the sciatic nerve, moderately severe. With loss of reflexes, muscle atrophy, sensory disturbance, and constant pain that at times is excruciating, it is at most severe. Peripheral nerves ratings are for unilateral involvement; when bilateral combine with application of the bilateral factor. 38 C.F.R. §§ 4.123, 4.124, 4.124a. 

Sciatic neurological manifestations are rated under Diagnostic Code 8520 as paralysis of the sciatic nerve. The criterion for a 10 percent rating is mild incomplete paralysis. The criterion for a 20 percent is moderate incomplete paralysis and 40 percent when moderately severe. When severe with marked muscular atrophy, 60 percent is warranted, and 80 percent for complete paralysis. See also 38 C.F.R. § 4.124a, Diagnostic Codes 8620, 8720 (for sciatic neuritis and neuralgia). 

The evidence shows that the Veteran's neurological disability of the right lower extremity has been characterized primarily by complaints of pain and by decreased sensation. These are sensory in nature. There is some indication of motor involvement with limitation of motion and his right foot drop, with the latter particularly accounting for his limp. There is some indication of weakness of the right ankle in dorsiflexion but no muscle atrophy or impairment of muscle tone of the right lower extremity. 

However, the disability has not been shown to equate with severe impairment. At the time of the 1998 VA peripheral nerve examination he had only mild foot drop. The foot drop was characterized in a January 2003 medical report as being slight. The May 2005 VA peripheral nerve examination yielded an impression of mild sensory peripheral neuropathy, which was also the finding on VA EMG that same month. The May 2005 VA spinal examination noted that his limp was mild, even though he staggered slightly. Also, the recent VA peripheral nerve examination in 2010 found that the Veteran's right lower extremity spasticity was only mild. More importantly, for the next higher rating of 40 percent there must be evidence of marked muscular atrophy but in this case there is no evidence of such a degree of muscular atrophy. 

Accordingly, while the Veteran does have some neurologically induce motor impairment of the right lower extremity, the disability is manifested primarily by sensory findings and the overall degree of impairment of the right lower extremity does not equate to severe impairment under DC 8520. 

Thus, the Board concludes that the record as a whole does not show persistent symptoms that equal or more nearly approximate the criteria for an evaluation higher than 20 percent for the service-connected neurological disability of the right lower extremity at any time during the appeal period. In other words, the disability has been no more than 10 percent disabling, so his rating cannot be "staged" because the 20 percent rating is his greatest level of functional impairment during the appeal period. 

Although the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation and Pension Service for a rating. The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. This is accomplished by comparing the level of severity and symptomatology of the service-connected disability with the established criteria. Thun v. Peake, 22 Vet. App. 111, 115 (2008); aff'd Thun v. Peake, 572 F.3d 1366 (Fed.Cir. 2009). If the criteria reasonably describe a veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate and referral for an extraschedular rating is not required. Thun, Id. 

Comparing the Veteran's current disability levels and symptomatologies to the Rating Schedule, the rating criteria are comprehensive, the degree of disability for the service-connected neurological disability of the right lower extremity is contemplated by the Rating Schedule, and the assigned schedule rating is adequate. Even if this were not the case, the disorder has not required frequent hospitalization, he is independent in his activities of daily living, and the disability is not so exceptional as to rendered impractical the application of the regular schedular standards. 

Thus, no referral for extraschedular consideration is required. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). Here, the preponderance of the evidence is against restoration of an initial 20 percent and is against a rating in excess of 10 percent. Thus, the doctrine of the favorable resolution of doubt is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Generally see Ortiz v. Principi, 274 F.3d 1361, 1361 (Fed. Cir. 2001). 



ORDER

Entitlement to restoration of the 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, effective from December 22, 1997, is granted.

Entitlement to an evaluation in excess of 20 percent for a neurological disability of the right lower extremity, previously classified as a spastic right lower extremity, now classified as peripheral neuropathy of the right lower extremity, is denied.




____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs