Citation Nr: 1214063 
Decision Date: 04/17/12 Archive Date: 04/27/12

DOCKET NO. 06-19 315 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to an increased rating for left knee limitation of motion, currently rated 10 percent disabling. 

2. Entitlement to an increased rating for left knee meniscal tear, status post arthroscopy, currently rated 10 percent disabling. 

3. Entitlement to an increased rating for right knee meniscal tear, status post arthroscopy, currently rated 10 percent disabling.


REPRESENTATION

Appellant represented by: Texas Veterans Commission




WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T.S. Willie, Counsel


INTRODUCTION

The Veteran served on active duty from August 1977 to September 1981 and had subsequent service in the Naval Reserve. 

These matters come before the Board of Veterans' Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In March 2010, the Veteran testified at a video hearing before the undersigned. A transcript of that hearing is of record.


FINDINGS OF FACT

1. Left and right knee subluxation and/or instability is no more than slight. 

2. Left knee limitation of motion is manifested by pain and limitation of flexion no less than 45 degrees. 

3. The left knee is manifested by joint pain, effusion and locking.

4. The right knee is manifested by joint pain, effusion and locking. 




CONCLUSIONS OF LAW

1. Left knee meniscal tear (instability or subluxation), status post arthroscopy, is no more than 10 percent disabling. 38 U.S.C.A. §§ 1155, 5107 (West 2002 and Supp. 2011); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2011).

2. Right knee meniscal tear (instability or subluxation), status post arthroscopy, is no more than 10 percent disabling. 38 U.S.C.A. §§ 1155, 5107 (West 2002 and Supp. 2011); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2011).

3. Left knee dislocated semi lunar cartilage is 20 percent disabling. 38 U.S.C.A. §§ 1155, 5107 (West 2002 and Supp. 2011); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5258 (2011).

4. Right knee dislocated semi lunar cartilage is 20 percent disabling. 38 U.S.C.A. §§ 1155, 5107 (West 2002 and Supp. 2011); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5258 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant.

Additionally, the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) (West 2002) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Prinicpi, 18 Vet. App. 112, 119 (2004). The timing requirement enunciated in Pelegrini applies equally to the initial disability-rating and effective-date elements of a service connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The record reflects that the originating agency provided the Veteran with the notice required under the VCAA by letters dated in July 2004 and June 2008. Moreover, the Board notes that the Veteran was afforded a hearing before the undersigned Veterans Law Judge (not a hearing officer) in March 2010. At the start of the hearing, the VLJ clarified the issues on appeal. During the hearing, there was discussion regarding additional evidence. This action supplements VA's compliance with the VCAA and satisfies 38 C.F.R. § 3.103.

VA must also make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefits sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2011). VA has also satisfied its duty to assist the appellant under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159. In connection with the current appeal, available treatment records have been obtained. We also note that the Veteran has been afforded appropriate and adequate VA examinations as they reflect a pertinent medical history, review of the documented medical history, clinical findings, a diagnosis, and opinions supported by medical rationale. 

For the foregoing reasons, the Board concludes that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the claim. The evidence of record provides sufficient information to adequately evaluate the claim, and the Board is not aware of the existence of any additional relevant evidence which has not been obtained. No further assistance to the appellant with the development of evidence is required. 38 U.S.C.A. § 5103A(a)(2); 38 C.F.R. § 3.159(d). Accordingly, the Board will address the merits of the claim.

LEGAL CRITERIA

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1, 4.2, 4.10 (2011). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2011).

Separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be "staged." Hart v. Mansfield, 21 Vet. App. 505 (2007) (staged ratings are appropriate when the factual findings show distinct period where the service- connected disability exhibits symptoms that would warrant different ratings.); see also Fenderson v. West, 12 Vet. App. 119, 126 (2001). A disability may require re-evaluation in accordance with changes in a veteran's condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1. We conclude that the Veteran's disability has not significantly changed and that a uniform rating is warranted throughout the appeal period, except as noted in the body of this decision. 

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45.

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C .F.R. § 4.59.

The Veteran's left knee limitation of motion is rated as 10 percent disabling under Diagnostic Code 5260. His left and right knee meniscal tear, status post arthroscopy, is rated under Diagnostic Code 5257. 

Under Diagnostic Code 5257 for subluxation or lateral instability of the knee, a 10 percent evaluation is warranted where impairment of the knee involves slight subluxation or lateral instability. A 20 percent evaluation is warranted where the impairment is moderate, and a 30 percent evaluation will be assigned where the impairment is severe. 

Where there is dislocated semi lunar cartilage with frequent episodes of locking, pain, and effusion into the joint, a 20 percent evaluation is assignable pursuant to 38 C.F.R. § 4.71a , Diagnostic Code 5258.

Under DC 5260, limitation of flexion is rated as noncompensable where flexion is limited to 60 degrees. Flexion of the leg limited to 45 degrees warrants the assignment of a 10 percent rating; flexion limited to 30 degrees warrants the assignment of a 20 percent rating; and flexion limited to 15 degrees warrants the assignment of a 30 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Limitation of extension is rated as noncompensable where extension of the leg is limited to 5 degrees. Extension of the leg limited to 10 degrees warrants the assignment of a 10 percent rating; extension limited to 15 degrees warrants the assignment of a 20 percent rating; extension limited to 20 degrees warrants the assignment of a 30 percent rating; and extension limited to 45 degrees warrants the assignment of a 50 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

Under DC 5262, a 10 percent evaluation is assigned for malunion of the tibia and fibula with slight knee or ankle disability. A 20 percent evaluation is assigned for malunion of the tibia and fibula with moderate knee or ankle disability. A 30 percent evaluation is assigned for malunion of the tibia and fibula with marked knee or ankle disability. A 40 percent evaluation is assigned for nonunion of the tibia and fibula with loose motion, requiring brace. 

The VA Office of General Counsel (GC) has issued opinions pertinent to claims of entitlement to higher evaluations for knee disabilities. Two of those GC opinions reflect that a veteran who has limitation of motion and instability of the knee may be evaluated separately under Diagnostic Codes 5003 and 5257 provided additional disability is shown. VAOPGCPREC 23-97 (July 1, 1997); VAOGCPREC 9-98 (August 14, 1998). 

Also, in a GC Precedent Opinion, VAOPGCPREC 9-2004 (September 17, 2004), it was held that a claimant who had both limitation of flexion and limitation of extension of the same leg must be rated separately under diagnostic codes 5260 and 5261 to adequately compensate for functional loss associated with injury to the leg. 

Normal range of knee motion is extension to 0 degrees and flexion to 140 degrees. 38 C.F.R. § 4.71, Plate II.

ANALYSIS

At present, two separate ratings are in effect for the Veteran's left knee. A 10 percent rating is assigned for instability under Diagnostic Code 5020-5257 and a 10 percent rating is assigned for limitation of motion under Diagnostic Code 5260. A rating of 10 percent is also assigned for right knee instability under Diagnostic Code 5020-5257. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2011). Diagnostic Code 5020 addresses synovitis, while DC 5257 addresses recurrent subluxation or lateral instability. 

The Veteran has appealed the denial of a rating higher than 10 percent disabling for the above. The rating criteria under Diagnostic Code 5257 is consistent with impairment of the knee involving slight subluxation or lateral instability. To warrant a higher rating under Diagnostic Code 5257 the evidence must show moderate impairment (due to subluxation or instability). The rating criteria under Diagnostic Code 5260 is consistent with flexion limited to 45 degrees. This rating contemplates periarticular pathology productive of painful motion. 38 C.F.R. § 4.59. Consideration is also given to additional limitation on repetition related to pain, fatigue, incoordination, weakness or lack of endurance. DeLuca, supra, 8 Vet. App. 202. To warrant a higher rating under Diagnostic Code 5260 the evidence must show the functional equivalent of flexion limited to 30 degrees. See DeLuca, supra; 38 C.F.R. § 4.7.

The Board notes that the Veteran was granted a temporary total evaluation for his right knee meniscus tear in January 2009. He was granted a temporary total from June 19, 2008 to August 1, 2008, after which the scheduler 10 percent evaluation was resumed. Accordingly, when reviewing the evidence applicable to the instant rating claim, the Board will consider this time frame to determine the overall impairment even though a temporary evaluation was assigned.

The Veteran had a right knee arthroscopy with medial meniscectomy in May 2004. Days after, it was shown that pain was minimal. 

The Veteran was examined in December 2004. The Veteran related during the examination that he was unable to bend down for a short period of time without his knees locking up on him. Symptoms of constant clicking, popping, locking and giving out were noted. He denied incapacitation. His functional impairment was that he was unable to climb stairs or ladders. His condition resulted in him missing work twice per month. The left and right knee general appearance was within normal limits. Range of motion testing revealed 90 degrees of flexion on the right with pain at 90 degrees and 45 degrees of flexion on the left with pain at 45 degrees. Extension was -10 on the left and right with pain at -10 degrees. 

On the right, range of motion was additionally limited by pain, weakness, lack of endurance, incoordination and pain. On the left, range of motion was additionally limited by pain, weakness, lack of endurance, incoordination and pain. Range of motion was not additionally limited on the right or left by fatigue. The Drawer test for the left and right knees was negative and McMurray was within normal limits. Examination of the right knee revealed recurrent subluxation which was slight in degree and locking pain. Examination of the left knee revealed recurrent subluxation which was slight in degree and locking pain. Left knee medial meniscus tear, status post arthroscopy and right knee meniscus tear, status post arthoscopy were diagnosed. 

MRI in December 2004 revealed that there was no evidence of left knee fracture or dislocation. There was no evidence of right knee fracture, dislocation or focal destructive lesion. For both knees, there was a lytic lesion with sclerotic margins in the proximal tibia which may have represented a bone infarct. However, the examiner could not exclude an enchondroma or other chondroid lesion. 

In a statement received in September 2005, the Veteran's wife stated that the Veteran's knees hurt so bad at night that it kept her up. She expressed that the pills did not provide relief. 

The Veteran was afforded a VA examination in November 2005. During the examination, the Veteran complained of right knee pain, weakness, stiffness, swelling, heat, redness, giving way, locking and lack of endurance. He described flare ups two or three times a month for two to three days at a time. He related that the knee kept him from working. For the left knee, he complained of pain, weakness, stiffness, swelling, heat, redness, instability, locking and lack of endurance. He reported flare ups when his knee swelled. He had no history of dislocation or subluxation of the left or right knee. He expressed that knee pain kept him from driving and that he wore a brace. 

Bilateral knee examination revealed active range of motion and passive range of motion including motion against gravity and against strong resistence was 0 to 140 degrees. There was pain at terminal flexion and pain with motion. There was also pain with repetitive range of motion on repetitive use. There were no meniscal signs bilaterally and ligaments were intact bilaterally. For the right knee, there was mild crepitus on on range of motion. For the left knee, there was +1 effusion with swelling around the tibial tubercle and tenderness. Otherwise, there was no weakness, redness, heat, abnormal movement or guarding of movement. 

In August 2006, the Veteran related that he was working and able to climb ladders. He described pain along the joint in both knees but denied locking, buckling or giving out. Mild degenerative joint disease bilateral knees was shown in September 2006. 

MRI of the right knee in September 2007 revealed the bones were in normal anatomic alignment. There was small prepatellar effusion, thickened retinaculum. The lateral meniscus, anterior horn of medial meniscus, cruciate and collateral ligaments were intact. Patella and quadricep tendons were unremarkable. An assessment was given of osteoarthritis to the knee. 

Examination in March 2008 revealed right knee pain and swelling. There was no discoloration but reduced range of motion. 

The Veteran described severe pain in April 2008. He was afforded a VA examination in April 2008. He reported consistent knee pain with infrequent locking and instability, and some swelling of the right knee. His left knee was not as bad as his right. He had no left knee instability or locking. He used a cane and a brace. His disability was noted to affect his sleep and daily activities of walking and standing. He was unemployed and stated that he could not walk because of his bilateral knee problems. Examination revealed that the knees appeared anatomically normal. There was no tenderness or swelling around the patella. He had no tenderness or swelling around the medial or lateral aspect of the joint. He did not have a Bakers' cyst or tenderness to the posterior aspect of the joint. He flexed to 140 degrees and extended to 0 degrees. Repeated flexion and extension of the knee produced no indication of pain, weakness, or fatigue. Lateral and medial stress of the knee showed no laxity of the lateral or medial collateral ligaments. He had negative anterior posterior drawer signs which indicated intact anterior posterior cruciate ligaments. McMurray's sign was negative. He walked with a bilateral limp to a certain degree due to weight bearing pain. 

Bilateral knee pain was noted in June 2008. At that time, the Veteran described constant pain on the right and episodic pain on the left worsened with standing, squatting, bending, kneeling, locking, buckling with pain, right knee swelling, am stiffness and occasional popping but no giving way. 

He had a right knee arthroscopy in June 2008. Follow up examination in July 2008 revealed no effusion, warmth, erythema or drainage. The medial and lateral anterior insertion sites were well healed with sutures in place. Range of motion of the right knee was 0 to 100 degrees. 

MRI of the left and right knee revealed no acute fracture, dislocation, destructive lesion or significant fluid in October 2008. 

The Veteran was afforded a VA examination in October 2008. During the examination, he reported symptoms of weakness, stiffness, swelling, heat, redness, giving way, lack of endurance, locking and fatigability. He did not have dislocation and reported constant AM pain over both knees. The pain traveled up and down his legs, and was described as crushing, squeezing, burning, aching, oppressing, sharp, sticking and cramping. The pain was elicited by physical activity. His functional impairment was difficulty climbing, kneeling and walking. Examination revealed his gait was within normal limits. There was right and left knee tenderness but no signs of edema, effusion, weakness, subluxation, redness, heat and/or guarding of movement. Examination of the right and left knee revealed no locking pain, genu recurvatum or crepitus. Range of motion was to 140 degrees for both knees with pain occurring at 140 degrees. Extension was full for both knees. 

The joint functions were additionally limited by pain but not additionally limited by fatigue, weakness, lack of endurance and/or incoordination. There was no additional limitation in degree. The anterior and posterior cruciate ligaments stability test of the knees was within normal limits. The medial and lateral collateral ligaments stability test was within normal limits. The medial and lateral meniscus test of the left knee was within normal limits. Bilateral knees meniscus tear, status post arthroscopy was diagnosed. Subjective factor was complaints of bilateral knee pain and objective factor was tenderness on palpation. 

In November 2009, an assessment was given of right knee meniscal tear, chondromalacia. There was mild effusion and range of motion to 130 degrees. The Veteran presented with chronic right knee pain in January 2010. He reported intermittent swelling and stiffness, and occasional locking and buckling. 

During his March 2010 hearing, the Veteran reported that in his examination last year he was noted to have 22 to 25 degrees of flexion. He also related that he was prescribed additional braces. He reported occasional knee locking. 

Subluxation or Lateral Instability, DC 5257

Based on the evidence presented, the Board finds against a higher rating for left and right knee instability or subluxation under DC 5257. In this regard, we find that subluxation or lateral instability of moderate impairment is not shown. At most, in the December 2004 examination, slight subluxation was shown for both knees. Throughout this appeal, the Veteran has complained of pain, weakness, stiffness, swelling, heat, redness, giving way, locking and lack of endurance. However, in October 2008, there was objective evidence of right and left knee tenderness but no signs of edema, effusion, weakness, subluxation, redness, heat and/or guarding of movement. We also note that the various VA examinations have revealed negative anterior posterior drawer signs and normal medial and lateral collateral ligaments stability tests. The medial and lateral meniscus test of the knees have also been within normal limits. While slight subluxation has been shown on examination and we acknowledge the Veteran's contentions of giving way, the evidence is devoid of a showing of subluxation or lateral instability of moderate impairment. The Veteran is competent to report giving way and we find these assertions credible. However, to the extent that he asserts that his knees give way, we note that objective evidence reveals that his disability is no more than slight. The above findings do not justify a higher rating under DC 5257 as no more than slight subluxation or lateral instability of either knee is shown. 

Other knee manifestations

Given the ranges of motion outlined earlier, the Board finds against a higher rating for left knee limitation of motion under DC 5260. In this regard, examination in December 2004 revealed left knee flexion to 45 degrees with pain. At that time, range of motion was additionally limited by pain, weakness, lack of endurance, incoordination and pain but not fatigue. Examination in November 2005 revealed full flexion. There was pain at terminal flexion, pain with motion, and pain with repetitive range of motion on repetitive use. Full flexion was also shown in April 2008. At that time, repeated flexion of the knee produced no indication of pain, weakness, or fatigue. Examination in October 2008 revealed range of motion was to 140 degrees with pain occurring at 140 degrees. While the joint function was additionally limited by pain, there was no additional limitation in degree per the examiner. Throughout this appeal, at most, the evidence has revealed flexion of the left knee limited to 45 degrees. In fact, the vast majority of the credible evidence reflects a good range of flexion.

We recognize that the Veteran has stated that examination in 2009 revealed that he had flexion limited to 22 to 25 degrees. However, the Veteran was requested to provide the VA with the examination that rendered these results. To date, he has not submitted the requested information. We also note that VA obtained his more recent treatment records and such did not disclose left knee flexion limited to 22 to 25 degrees as asserted by the Veteran. Rather, the record shows at most throughout this appeal the Veteran's left knee flexion has been limited to 45 degrees or better. As such, the more probative evidence, i.e. the VA examinations of record, discloses that left knee flexion has at most been limited to 45 degrees, even when accounting for pain. These findings do not justify an evaluation higher than 10 percent disabling for left knee limitation of flexion under DC 5260. 

The Board acknowledges the Veteran's assertions that his disability is more severe than evaluated to include his reports of limitations with bending and climbing stairs. We have also considered his contentions of pain. The Veteran is competent to report pain and we find these assertions credible. However, to the extent that he asserts that his left knee is limited to 22 to 25 degrees in flexion, we note that objective evidence has not confirmed such and we do not find this assertion credible. The more credible and probative evidence is devoid of a showing that left knee flexion is functionally limited to 30 degrees or less. 38 C.F.R. § 4.7. Past examinations disclosed some limitation, but nothing approximating the functional equivalent of limitation of flexion of the left knee to 30 degrees or less. Although the Veteran has reported knee pain, we note that pain is considered in the current evaluation. See 38 C.F.R. § 4.59. Neither the unconvincing lay nor medical evidence reflects the functional equivalent of symptoms required for a higher evaluation for left knee limitation of motion under DC 5260, i.e., the functional equivalent of flexion limited to 30 degrees. In sum, the lay evidence reflecting restriction of flexion to 25 degrees or less is wildly inconsistent with the objective observations of the skilled professionals. Such lay evidence is not credible.


Code 5258

Regarding the right knee, the Board finds that an evaluation is warranted under DC 5258 for dislocated semi lunar cartilage. In this regard, while not shown on examination in October 2008, the prior examinations have shown left and right knee effusion. The Veteran has also consistently reported bilateral knee pain and locking throughout this appeal. We find his assertions credible. Bilateral knee meniscus tear, status post arthroscopy, has also been diagnosed. Given the results above, we find that the Veteran's left and right knee disability picture more nearly approximates the criteria required for the 20 percent criteria of DC 5258 which contemplates dislocated semi lunar cartilage with frequent episodes of locking, pain, and effusion into the joint. To that end, there is evidence of a meniscus tear, evidence of effusion and credible evidence of locking and pain. See 38 C.F.R. § 4.7. 

We note that the Veteran is not entitled to ratings under both DC 5260 and DC 5258 for the knee. See generally VAOPGCPREC 9-98. To that end, we find that his disability picture is more accurately reflected under DC 5258 and that a rating of 20 percent disabling is warranted under DC 5258. Since this results in a higher evaluation, he is not prejudiced thereby. See Bernard v. Brown, 4 Vet. App. 384 (1993). Accordingly, a 20 percent rating for left and right knee dislocated semi lunar cartilage under DC 5258 is granted. 

Consideration of Other Knee Codes

The Board has considered whether a separate compensable evaluation is warranted based on limitation of extension. 38 C.F.R. § 4.71a, Diagnostic Code 5261. With the exception of -10 degrees of extension shown in December 2004, the Veteran has retained full extension throughout this appeal. We note that the finding in December 2004 was months after knee surgery and that such is a single finding of some limitation of extension. However, examinations thereafter revealed full extension and appear to be more reflective of the Veteran's extension ability. As such, we find that a separate rating is not warranted for limitation of extension as the more consistent and probative evidence reveals that the Veteran retains full extension. Furthermore, the evidence is devoid of a showing of ankylosis (DC 5256) or impairment of the tibia and fibula (5262). As such, the codes noted above are not applicable. 

The Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the Veteran or his representative, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Accordingly, the appeal for a rating higher than 10 percent disabling for limitation of flexion of the left knee is denied. However, we find that a rating of 20 percent disabling for left and right knee tear, status post arthroscopy, under DC 5258 is warranted. 


Extraschedular consideration

Regarding referral for extraschedular consideration, consideration of referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether an extraschedular rating is warranted. 

Here, the Board finds that the Veteran has not required frequent periods of hospitalization for his disabilities and that the manifestations of his disabilities, including limitation of motion and reports of pain, are contemplated by the schedular criteria. Therefore, there is no reason to believe that the average industrial impairment from the disabilities would be in excess of that contemplated by the schedular criteria. Therefore, referral of the case for extra-schedular consideration is not in order. 


ORDER

A rating higher than 10 percent disabling for left knee meniscal tear, status post arthroscopy (DC 5257)is denied. 

A rating higher than 10 percent disabling for right knee meniscal tear, status post arthroscopy (DC 5257) is denied. 

A rating of 20 percent disabling for left knee dislocated semi lunar cartilage (DC 5258) is granted, subject to the controlling regulations applicable to the payment of monetary benefits. (This evaluation may not be combined with DC 5260).

A rating of 20 percent disabling for right knee dislocated semi lunar cartilage (DC 5258) is granted, subject to the controlling regulations applicable to the payment of monetary benefits.



____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs