# United States Court of Appeals for the Federal Circuit

2008-7135

DENNIS M. THUN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Meredyth Cohen Havasy, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Y. Ken Lee, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2008-7135

DENNIS M. THUN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
in 05-2066, Chief Judge William P. Greene, Jr.

_____

DECIDED:  July 17, 2009
_____

Before MAYER, RADER, and BRYSON, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

In most veterans' benefits cases, the Department of Veterans Affairs ("DVA") assigns disability ratings based on a schedule of ratings for specific injuries and diseases.  Sometimes, however, the schedular criteria are inadequate to capture the full extent and impact of the veteran's disability.  The DVA has provided by regulation that in such an exceptional case the veteran may be eligible for an "extra-schedular" disability rating.  38 C.F.R. § 3.321(b)(1).

This appeal concerns the proper allocation of authority to adjudicate a veteran's entitlement to an extra-schedular disability rating under section 3.321(b)(1) of the DVA's regulations, 38 C.F.R. § 3.321(b)(1). The Court of Appeals for Veterans Claims ("the Veterans Court") held that while the Under Secretary for Benefits and the Director of the Compensation and Pension Service are the only individuals authorized to assign an extra-schedular rating, the DVA regional offices and the Board of Veterans' Appeals may conduct initial screening of disability claims and may refer to the Under Secretary or the Director only those claims that meet two of the three regulatory criteria for extra-schedular consideration. Thun v. Peake, 22 Vet. App. 111 (2008). We affirm.

I

Appellant Dennis M. Thun served in the United States Marine Corps from April 1966 until April 1972. During his service, he participated in several combat operations in Vietnam. In June of 1999, a DVA examining physician diagnosed Mr. Thun as suffering from post-traumatic stress disorder caused by his combat experience in Vietnam. A DVA regional office granted Mr. Thun service-connected disability status and rated his condition as 10 percent disabling. Mr. Thun continued to press his claim for disability benefits, seeking an increased disability rating and a referral to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for an extra-schedular rating.

In February 2005, the regional office increased Mr. Thun's disability rating to 70 percent but denied the request for extra-schedular consideration. With respect to Mr. Thun's referral request, the regional office found that Mr. Thun did not have any exceptional or unusual symptoms that were not expressly contemplated by the rating

schedule for anxiety disorders.  As further support for its decision, the regional office cited the absence of any record evidence that the 70 percent rating misrepresented the extent to which Mr. Thun's disability interfered with his employment.  On appeal, the Board upheld the denial of Mr. Thun's referral request.  The Board was persuaded that Mr. Thun's symptoms were "squarely contemplated by the rating criteria supporting a 70 percent rating."  In the alternative, the Board found that there was no evidence in the record of any "marked interference with obtaining and retaining employment."

The Veterans Court sustained the Board's decision as to Mr. Thun's request for extra-schedular consideration.  The court began by setting out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extra-schedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extra-schedular disability rating must be in the interest of justice.  Under the regulation, the court held that the regional office and the Board have the authority to deny extra-schedular consideration in any case in which they determine that the claim fails either of the first two steps of the test.  However, if the regional office or the Board finds that the rating schedule is inadequate and the case presents other factors indicative of an exceptional or unusual disability, the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination of whether an extra-schedular rating should be assigned in the interest of justice.  Thun, 22 Vet. App. at 115–17.

After laying out the applicable legal principles, the court turned to the merits of Mr. Thun's appeal. The court affirmed the Board's finding that his case was not exceptional or unusual in light of the schedular criteria for anxiety disorders. With respect to the Board's alternative basis for decision, the court held that the Board had erred by imposing a more demanding standard than was required by the DVA's regulations. The Board had rejected Mr. Thun's referral request for failure to demonstrate any difficulty in "obtaining and retaining employment," even though the DVA's regulations merely require a showing that the disability caused "marked interference" with existing employment. The Veterans Court concluded, however, that the Board's error was harmless because the finding as to the adequacy of the rating schedule was sufficient to sustain the denial of Mr. Thun's referral request. 22 Vet. App. at 117–18.

II

On appeal, Mr. Thun does not challenge the Veterans Court's articulation of the standard for determining whether a veteran is entitled to an extra-schedular rating pursuant to 38 C.F.R. § 3.321(b)(1). Rather, Mr. Thun's sole contention is that the Veterans Court misinterpreted section 3.321(b)(1) as authorizing the DVA regional offices and the Board to reject a claim for extra-schedular consideration based on their determination that the veteran does not qualify for a referral. Mr. Thun argues that section 3.321(b)(1) requires the DVA regional offices and the Board to refer any case in which they find a "plausible basis" for an extra-schedular rating, leaving to the Under Secretary for Benefits and the Director of the Compensation and Pension Service the task of assessing the merits of the claim.

Section 3.321(b)(1) provides as follows, in pertinent part:

> To accord justice . . . to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular scheduler standards.

In construing the regulation, we first look to whether the DVA has offered its own authoritative interpretation. An agency's interpretation of its own regulation is controlling unless that interpretation is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997); see also Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 417-18 (1945); Haas v. Peake, 525 F.3d 1168, 1186-87 (Fed. Cir. 2008). Such strong deference is appropriate even when the agency's interpretation was announced without resort to formal steps such as notice-and-comment rulemaking and publication in the Federal Register. As the Supreme Court has noted, it is sufficient that the asserted interpretation reflects "the agency's fair and considered judgment on the matter." Auer, 519 U.S. at 462-63.

The DVA's interpretation of section 3.321(b)(1) is set forth in the Veterans Benefits Administration Adjudication Procedure Manual M21-1 ("the VBA manual"). The VBA manual instructs the regional offices to "[s]ubmit compensation claims . . . for extra-schedular consideration under 38 C.F.R. 3.321(b)(1) if . . . the schedular evaluations are considered to be inadequate for an individual disability." In cases in which the regional offices find merit in a veteran's claim for extra-schedular

consideration, the VBA manual directs the preparation of a memorandum to the Director of the Compensation and Pension Service that includes a statement of the facts and a "recommended evaluation." The VBA manual therefore contemplates that the regional offices will analyze the record evidence and will make the factual findings necessary to support a recommendation to the Director. While the VBA manual contains no express statement that the regional offices have the authority to reject claims for extra-schedular consideration, the clear import of the manual is that a referral will be made only if the regional office or the Board deems the case to be meritorious.

We agree with the government that section 3.321(b)(1) does not unambiguously preclude the regional offices and the Board from performing a threshold inquiry into whether a veteran qualifies for extra-schedular consideration. Contrary to Mr. Thun's assertions, nothing in the language of the regulation limits the regional offices and the Board to considering whether a "plausible basis" for an award exists. Although only the Under Secretary and the Director have the authority to award an extra-schedular rating, the regulation is silent on the question whether those individuals must also make all of the factual findings necessary to support the award.

The regulation's use of the phrase "upon field station submission" suggests, at a minimum, that the regional offices and the Board were intended to play some role in evaluating a claim for an extra-schedular rating. Permitting the regional offices and the Board to issue a "field station submission" in which they recommend extra-schedular consideration still reserves to the Under Secretary and the Director the ultimate authority to "approve" those recommendations based on whether the veteran should receive an extra-schedular rating "to accord justice."

Mr. Thun argues in favor of a restrictive interpretation of section 3.321(c) by analogizing to 38 C.F.R. § 4.16(b), which provides:

> [R]ating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section.

Mr. Thun insists that because "nothing in § 4.16(b) suggests that the regional office needs to make a threshold inquiry before it makes a referral," section 3.321(b)(1) should be similarly interpreted to preclude the regional office and the Board from conducting a threshold inquiry into the merits of a request for extra-schedular consideration.

We do not accept the premise of Mr. Thun's argument, namely, that under section 4.16(b) the regional office does not make any threshold inquiry before referring the matter to the Director of the Compensation and Pension Service. The plain language of the regulation requires such referrals to be made only when it has been determined that the claimant is "unemployable by reason of service-connected disabilities." And the DVA's General Counsel has issued a precedential opinion stating that section 4.16(b) requires "a finding that the service-connected disabilities render a particular veteran unemployable." DVA General Counsel Op. 6-96 ¶ 5. Because a finding of unemployability is a condition precedent to a referral by the regional office under section 4.16(b), that regulation supports, rather than undermines, the DVA's interpretation of section 3.321(b)(1).

The DVA's interpretation finds further support in 38 C.F.R. § 3.321(c), which states that "[c]ases in which . . . the propriety of an extra-schedular rating is questionable may be submitted to Central Office for advisory opinion." Because that

regulation provides an optional mechanism for submitting cases to the Central Office, the implicit suggestion is that the "propriety of an extra-schedular rating" in most cases shall be decided by the regional offices and the Board in the first instance. Thus, the regulatory context of section 3.321(b)(1) is consistent with the notion that the regional offices and the Board have been charged with a substantial role in adjudicating a veteran's entitlement to an extra-schedular rating.

Finally, Mr. Thun argues that the DVA's interpretation of section 3.321(b)(1) creates a bifurcated process in which the claimant's opportunity for judicial review "is limited to the refusal to refer and does not reach the decision made by the Under Secretary or the Director on the merits of the referral." The DVA's interpretation of section 3.321(b)(1) does not restrict the opportunity for judicial review. Under either interpretation, factual determinations must be made as to whether a veteran qualifies for an extra-schedular rating. If the regional office or the Board makes factual findings adverse to the claimant with regard to the extra-schedular claim, those findings will be reviewable by the Veterans Court under the clearly erroneous standard of review, see 38 U.S.C. § 7261(a)(4), just as would be the case if those findings were made by the Under Secretary or the Director.

Each party shall bear its own costs for this appeal.

<u>AFFIRMED</u>.