KASOLD, Chief Judge,
dissenting:
With great respect for my colleagues in the majority, two of their conclusions are simply wrong, with one such conclusion having significant adverse effect on veterans and the VA claims process. The first and foremost error is the majority’s finding of ambiguity in a clear regulation based solely on an assertion of ambiguity in the briefing and arguments presented by the counsel to the Secretary, which causes the majority to effectively defer to the redrafting of an otherwise clear regulation, under the guise of interpretation. The second error is the majority’s apparent holding that to be adequate the Board’s statement must follow a prescribed order of discussion; although the holding is nonconsequential to the result in this case because the majority find no prejudice, it is worth noting that as a matter of law it is simply wrong.[10]
I. FIRST ERRONEOUS CONCLUSION

Overview

At the outset, an overview of the issue and how it is presented, as well as what is not at issue, is warranted. The Secretary has established a rating schedule with assigned disability ratings that the RO and Board may award to veterans with disabilities based generally on the degree of disability and the effect it has on a veteran’s earning capacity, but based sometimes on other factors such as effect on social functioning or effect on daily activities. Hensley v. Brown, 5 Vet.App. 155, 162 (1993) (“VA’s rating schedule is constructed for the purpose of establishing levels of disability for compensation purposes based upon ‘average impairment in earning capacity resulting from particular injuries or diseases.” (quoting 38 U.S.C. § 1155)); see also 38 C.F.R. § 4.1 (2012) (“The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations.”); compare 38 C.F.R. § 4.130, DC 9411 (2012) (evaluating PTSD based upon “[ojccupa-tional and social impairment”), with 38 C.F.R. § 4.88b, DC 6354 (2012) (evaluating chronic fatigue syndrome based upon the *253 degree to which fatigue “restricts routine daily activities”).
Also, to accord justice in exceptional cases where there are unusual factors present and the rating schedule does not adequately address an individual’s earning capacity impairment due to disability, the Secretary has authorized the under secretary for benefits (USB) or the director of the compensation and pension service (Director), to award an extraschedular rating. 38 C.F.R. § 3.321(b) (2012). Neither the RO nor the Board is authorized to award an extraschedular rating. Rather, the RO and Board are tasked with determining whether such a rating might be warranted, such that referral for USB or Director consideration is warranted. For purposes of our review, the Board is required to address such possible referral whenever the issue is raised by a veteran or otherwise reasonably raised by the record, and, if referral is denied, to provide reasons or bases for denying such referral. See Gutierrez v. Principi, 19 Vet.App. 1, 9 (2004) (Board’s reasoning flawed when it fails to discuss adequately evidence in support of claim); Thompson v. Gober, 14 Vet.App. 187, 188 (2000) (Board must provide an adequate statement of reasons or bases “for its rejection of any material evidence favorable to the claimant”); Pond v. West, 12 Vet.App. 341, 347 (1999) (Board is required to develop all issues reasonably raised below); Talbert v. Brown, 7 Vet.App. 352, 356 (1995) (noting that the Board must address reasonably raised issues and is not obligated to “conduct an exercise in prognostication”).
There is no dispute as to the Board’s obligation to evaluate whether referral for extraschedular consideration is warranted with regard to an individual disability. Rather, the issue is whether the Board has a duty to consider and address possible referral for extraschedular consideration when the total disability picture of the veteran — a disability picture based on all of a veteran’s disabilities and the combined effect they have on employability and earnings capacity — is exceptional or unusual and is not contemplated by the rating schedule’s focus on average earning capacity impairment for each individual disability.
The Secretary’s counsel acknowledges that the Secretary has the legal authority to authorize an extraschedular disability rating based on the complete disability picture of a veteran, but counsel argues that the Secretary has not done so. Rather, counsel argues that the Secretary has delegated to the USB and Director the authority to award an extraschedular disability rating only for each individual disability, based on the limited disability picture associated with the effects of that disability on a veteran’s employment and earnings ability. Otherwise stated, the Secretary’s counsel argues that neither the USB nor the Director may award an ex-traschedular disability rating based on a veteran’s total disability picture. Accordingly, the Secretary’s counsel argues that there is no reason for the Board to consider and address possible referral for an extraschedular disability rating based on the veteran’s total disability picture, and therefore there is no error.
Significantly, the issue is not whether the USB or Director should have awarded an extraschedular disability rating on the veteran’s complete disability picture based on all disabilities and the combined effect they have on employability and earnings capacity. Rather, the issue is whether the USB or Director even have the authority to make such an award; if yes, then remand is required so that the Board may address the issue. As discussed below, pursuant to the plain language of § 3.321(b), the USB and Director have the *254 authority,[11] and the Board erred by not discussing whether Mr. Johnson’s claim should have been remanded for further development of possible entitlement to an extraschedular disability rating on a collective-disability basis.

Saying Something is Ambiguous Does not Make it So

Although counsel for the Secretary argues that § 3.321(b) is ambiguous, and his argument is cause for serious review, simply saying something is ambiguous does not make it so. See Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006) (“[A] regulation is not ambiguous merely because the Secretary takes a litigation position that contradicts the plain language of the regulation.”); see also Stolt-Nielsen SA. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 130 S.Ct. 1758, 1769 n. 7, 176 L.Ed.2d 605 (2010) (“[M]erely saying something is so does not make it so.... ”). As discussed below, the plain wording and promulgating history of the regulation clearly reflect the Secretary’s delegation of authority to award an extraschedular rating based on a veteran’s total disability picture arising from multiple disabilities. Moreover, counsel for the Secretary fails in his multiple assertions to explain why the regulation should be interpreted as limiting the authority of the USB and Director to award an extraschedular rating based on a veteran’s complete disability picture.
I also note that although a majority of the Court find ambiguity in § 3.321(b), or at least accept the argument of counsel to the Secretary that there is ambiguity, their numbers and acquiescence do not mean that the regulation is ambiguous. If it were so, Hans Christian Andersen’s “The Emperor’s New Clothes”[12] never would have gained the renown it has acquired, and appellate decisions finding ambiguity would never be reversed by the Supreme Court. See, e.g., Chem. Mfrs. Ass’n v. Natural Res. Defense Council, Inc., 470 U.S. 116, 124-25, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) (reversing the finding of the U.S. Court of Appeals for the Fourth Circuit that an amendment to the Clean Water Act was ambiguous); Smith v. Illinois, 469 U.S. 91, 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (reversing the Illinois Supreme Court’s finding that the defendant’s responses to continued police questioning rendered his initial request for counsel ambiguous).
Moreover, although Lewis Carroll’s Humpty Dumpty might define words as he wishes in Through the Looking Glass, the words in our laws and regulations are given their contextual, ordinary meaning. See, e.g., Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“Ambiguity is a creature not of definitional possibilities but of statutory [or regulatory] context.”); Tropf, 20 Vet.App. at 321 *255 n. 1 (“[A] statute is ambiguous only when the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue.”); see also United, Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (stating that “[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme — because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law” (citations omitted)); Gardner v. Derwinski, 1 Vet.App. 584, 586 (1991) (“Determining a statute’s plain meaning requires examining the specific language at issue and the overall structure of the statute.” (citing Bethesda Hosp. Ass’n v. Bowen, 485 U.S. 399, 403-05, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988))), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).

The Regulation’s Plain Language

Substantial deference is granted to the Secretary’s interpretation of his own regulation so long as it is not “plainly erroneous or inconsistent with the regulation.” Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); see also Smith v. Nicholson, 451 F.3d 1344, 1349-50 (Fed.Cir.2006) (citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)).
The regulation governing extraschedular consideration reads, in pertinent part:
To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.
38 C.F.R. § 3.321(b)(1) (emphasis added).
Rather than addressing the situation where “a schedular evaluation” is inadequate, which would indicate a focus on each disability evaluation independently, the regulation addresses the plural situation where “the schedular evaluations” are inadequate, which can encompass an individual disability evaluation as well as multiple disability evaluations. Id. Similarly, rather than limiting the criteria for an extraschedular evaluation to the exceptional case where an individual disability causes earnings impairment beyond the average impairment, the regulation explicitly notes that an extraschedular evaluation is to be based on earnings impairment beyond average caused by “disability or disabilities,” which clearly contemplates overall impairment caused by the disabilities individually as well as collectively.
Tellingly, the regulation authorizes “an “extraschedular” evaluation ” which, in the context of the schedular evaluations being inadequate and the extraschedular evaluation being based on the earnings impairment due to disability or disabilities, reflects that the extraschedular evaluation can be done on an individual or composite disability basis. Also, the governing norm for considering whether an extraschedular evaluation should be awarded is predicated on the exceptional or unusual disability *256 picture of the veteran, which, in the context of determining earnings impairment due to disability or disabilities certainly envisions the veteran’s complete disability picture, whether due to one disability or multiple disabilities.
Additionally, the predicate for authorizing an extraschedular evaluation is “[t]o accord justice.” Although the Secretary could have accorded justice only on a disability-by-disability basis, the language of the sentence containing this phrase, as well as the language of the entire regulation, does not support such a limiting interpretation, which also would be inconsistent with the broad concept of according justice. For example, under the regulation, a service-connected right-hip, right-knee, and right-ankle disability assessed individually, might not affect employment on an individual disability basis beyond the degree envisioned by the individual disability ratings, but — when viewed collectively — the disabilities might significantly affect employment. Nothing in the Secretary’s regulation limits extraschedular consideration to a disability-by-disability assessment; indeed, the regulation states the opposite. Moreover, inasmuch as the Secretary has broad authority to issue regulations, 38 U.S.C. § 501, there was no need to cite “justice” as the basis for authorizing an extraschedular evaluation unless the delegation was intended to be broad, and there is no reason to twist the interpretation of “justice” as only permitting an extraschedular evaluation on a limited, individual-disability basis. If the Secretary wanted to limit the criteria for an extraschedular evaluation to a disability picture associated with only a single, individual disability he could have done so; he did not, and has not yet done so.[13]
Although counsel for the Secretary argues that the regulation’s reference to “disability or disabilities” connotes extras-chedular evaluation for one or more individual disabilities as opposed to an evaluation based on the collective effect of multiple disabilities, such an interpretation ascribes a degree of redundancy to the regulation — and such a constrained view of “accordpng] justice” — that it would be contrary to the well-established rule that effect must be given to all words expressed in legislation and regulation. Roper v. Nicholson, 20 Vet.App. 173, 178 (2006) (holding that “the VA statutory and regulatory scheme ‘should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignifi *257 cant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error’ ” (quoting 2A N. Singer, SutheRland on Statutory Construction, § 46:06 (6th ed. 2000))); see also King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (holding that, when interpreting a statute or regulation, the court is required to look at the context and provisions of law as a whole); Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1564 (Fed.Cir.1995) (holding that all parts of a statute must be construed together without according undue importance to a single or isolated portion); Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (the canons of statutory interpretation apply to interpreting regulations).
It is worth reiterating that the interpretation recently proffered by counsel for the Secretary limits the authority of the USB or Director, each of whom has been delegated authority in § 3.321(b)(1) to render extraschedular evaluation decisions. See also 38 U.S.C. § 512(a) (giving Secretary broad authority to delegate authority to act); Parrish v. Shinseki, 24 Vet.App. 391, 396 (2011) (recognizing Secretary’s broad authority to delegate authority to act); 38 C.F.R. § 3.100(a) (delegating general authority to the USB to act on matters within the jurisdiction of the Veterans Benefit Administration). To be sure, neither the USB nor the Director is required to grant an extraschedular evaluation simply because a veteran has multiple disabilities— indeed, extraschedular evaluation is for the exceptional or unusual case — but there equally is nothing in the regulation that limits their authority to grant an extras-chedular evaluation based only on a disability-by-disability basis. As indicated above, if the Secretary wanted to limit the authority of the USB or the Director, he could have done so — and still can; but, he has not.[14]

Promulgating History

Although the plain meaning of the regulatory language is clear and binding, counsel for the Secretary suggests that the regulation’s promulgating history supports the interpretation that the authority delegated to the USB and Director is limited in scope. To the contrary, however, the promulgating history supports the plain language of the regulation that the USB and Director have been delegated broad authority to award an extraschedular disability rating based on the total disability picture of the veteran.
Based on the Secretary’s supplemental memoranda, the regulation has its roots in a 1930 rule, Rule 1142. Secretary’s Supplemental (Sec. Supp.) Br. at App’x A (cited by the Secretary as VA Rules and Procedure § 1307 (May 19, 1930)). The language therein is unclear — ambiguous— as to whether an extraschedular disability rating could be predicated on a multiple-disability basis, because the rule simply indicates that such a rating would be based on the reduction in average earning capacity compared to the average worker “suffering a similar disability,” which envisions either a single disability or multiple disabilities.
*258 VA regulations from 1934, however, strongly indicate that an extraschedular evaluation was permissible based on multiple disabilities. Specifically, VA Regulation No. 3 primarily addressed total disability ratings and clearly authorized such ratings based on total disability arising from a single disability or multiple disabilities. Sec. 2d Supp. Br. at App’x G (cited by the Secretary as Veterans Regulation No. 3(a) on VA Rules and Procedures § 1307) (“The rule ... permit[s] ratings of total disability ... when the disabled person ... has been unable, by reason of impairment of mind or body, to follow substantially gainful occupation, provided that his physical or mental disabilities are deemed by the rating agency to be sufficiently severe to produce this occupational incapacity” (emphasis added)). Pertinent hereto, this same regulation explicitly authorized submission of meritorious cases for consideration of an extraschedular rating when the case did not qualify for a total disability rating under the rating schedule or Regulation No. 3. Inasmuch as Regulation No. 3 addressed a total disability rating predicated on either a single- or collective-disability basis, it is disingenuous for the Secretary’s counsel to argue that this regulation authorized referral for ex-traschedular consideration of cases (that did not qualify for a total disability rating) only on an individual-disability basis.
Revisions reflected in the 1936 VA version of VA Rules and Procedures § 1142 also indicate that an extraschedular evaluation could be predicated on multiple disabilities, and it certainly contains no limitation against such a rating. Specifically, the rule provides that, if the general rating schedule was deemed inadequate, the matter could be forwarded for an advisory opinion or reevaluation. Of note, the forwarded submission was to include a recommendation and “evaluation of every disability.” Sec. Supp. Br. at App’x B (cited by the Secretary as VA Rules and Procedure § 1142 (Jan. 25, 1936)). A 1945 VA rule also provides the same general guidance that, if the rating schedule is deemed inadequate, a claim may be forwarded for an advisory opinion or reevaluation, although the 1945 rule does not contain the guidance stated in the 1936 rule as to what should be included in the forwarded submission. Sec. Supp. Br. at App’x C (cited by the Secretary as VA Regulation § 1142(A) (Oct. 19, 1949)[sic]).
In 1960, an interim regulation was issued that provided, inter alia, effective dates for an extraschedular evaluation, tied to the date of the claim or the facts of the case. Although the Secretary’s briefing suggests that this .supports an interpretation that extraschedular consideration is predicated only on a single-disability basis, the suggested support is illusive, at best. Whether predicated on a claim for one disability or multiple disabilities, or predicated on a disability recently found to be service connected for a veteran already service connected for one or more disabilities, the effective date of an extraschedular evaluation is tied to the date of the earliest claim still open or the facts found, similar to the effective date for the award of a total disability rating based on individual unemployability (TDIU). 38 U.S.C. § 5110(a) (“[T]he effective date of an award ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.”). Otherwise stated, how an effective date is determined sheds no light on whether the USB or Director has the authority to grant an extraschedular evaluation on only a single-disability basis or a cumulative-disability basis. Sec. 2d Supp. Br. at App’x H (cited by the Secretary as VA Emergency Interim Issue, EM 21-58 (June 17, 1960)).
*259 By 1961, VA had codified its regulations and implemented VA Regulation 1321, a version of § 3.321 substantially similar to its current form. Here, any ambiguity present in the earlier VA rules is gone. Though not precluded earlier, by 1961 it became clear that an extraschedular evaluation could be granted “commensurate with the average earning capacity impairment due exclusively to the service connected disability or disabilities,” Id. (emphasis added). An explanation associated with the regulatory changes made to several regulations in 1961 notes that most regulatory changes were nonsubstantive, except for the changes to Regulations 1353 and 1321, which were “substantive.” Sec. 2d Supp. Br. at App’x J (cited by the Secretary as VA Regulation 1321 (§ 3.321) (1961)). Although the specific substantive changes were not further detailed, the addition of “or disabilities” in the context of generally ambiguous rules in the past, and in the context of substantive changes being made speaks volumes. Id.
In sum, the regulation’s promulgating history supports the plain language of the regulation that the USB and Director have been delegated broad authority to award an extraschedular disability rating based on the total disability picture of the veteran. See Hamdan v. Rumsfeld, 548 U.S. 557, 580 n. 10, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (noting that the Court’s interpretation of the plain language of a statute is supported by the legislative history); Lamie v. U.S. Trustee, 540 U.S. 526, 539, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (noting that “history and policy considerations lend support” to Court’s holding regarding the plain language of a statute).

VA Adjudication Procedures Manual

The Secretary’s briefing notes that the VA Adjudication Procedures Manual (M21-1MR) states that a claim is to be submitted for extraschedular eonsider-ation under “38 C.F.R. § 3.321(b)(1) if the schedular evaluations are considered to be inadequate for an individual disability ” (emphasis added), and the briefing contends that this phrasing reflects an interpretation that § 3.321(b)(1) prohibits extraschedular consideration based on multiple disabilities. M21-1MR, pt. III, subpt. iv, ch. 6, sec. B(5)(c) (cited by the Secretary in Sec. Supp. Br. at App’x G). However, reading M21-1MR as limiting the criteria for extraschedular consideration to only those instances where the schedular evaluations are inadequate for an individual disability would result in M21-1MR trumping the plainly established broader criteria in the regulation that is not subject to being trumped by the M21-1MR. See Smith v. Shinseki, 647 F.3d 1380, 1385 (Fed.Cir.2011) (“VA interpretations of its own regulations in its Adjudication Procedures Manual [M21-1] are ‘controlling’ as long as they are not ‘plainly erroneous or inconsistent with the regulation.’ ” (quoting Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed.Cir.2009) (quoting Auer, 519 U.S. at 461, 117 S.Ct. 905))); Castellano v. Shinseki, 25 Vet.App. 146, 151-52 (2011) (holding that “a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation”).
Moreover, although this instructional manual directs referral for extraschedular consideration when the rating schedule is inadequate to rate an individual disability, it does not preclude referral for extrasche-dular consideration based on the veteran’s collective disabilities. Indeed, in a preceding section, the manual directs rating officials to “consider” possible entitlement to an extraschedular evaluation when, inter alia, the evidence indicates “the rating schedule may be inadequate to compensate for the average impairment of earning ca *260 pacity due to disability (for example, marked interference with employment or frequent periods of hospitalization).” M21-1MR, pt. III, subpt. iv, sec. 6.B(10)(a) (emphasis added). There is no indication that “disability” is limited to an individual disability, which would be the case if “a disability” had been used instead of “disability.” There also is no indication that rating officials should not forward a claim for extraschedular consideration based on evidence that the rating schedule is inadequate for a disability picture resulting from multiple disabilities.
Read together, these two provisions indicate that the rating official must submit a claim for extraschedular consideration when the rating schedule is inadequate for an individual disability, but may also submit a claim for extraschedular consideration whenever the rating schedule is inadequate to compensate the veteran as a result of “disability,” which can consist of multiple disabilities. Thus, even if § 3.321(b) were ambiguous, the M21-1 does not reflect an interpretation that the USB or Director lack the authority under § 3.321(b) to award an extraschedular evaluation on a combined disability basis.
In sum, the M21-1MR not only cannot trump the plain language of a regulation, it does not even conflict with the regulation here. Castellano, supra; cf. Talley v. Derwinski, 2 Vet.App. 282, 287 (1992) (holding that, just as statutes should be construed to sustain constitutionality, regulations should be construed to harmonize with the law).

VA Practice

The Secretary’s briefing notes an inability to confirm a consistent Agency practice regarding this issue, which — he asserts— reflects a lack of authority in the USB or Director to award an extraschedular evaluation on a multiple-disability basis. The briefing speculates that some Board decisions might have considered referral in such a context, although no officials contacted by counsel for the Secretary recall a decision granting such a rating. Moreover, none of the key officials, i.e., the Secretary, USB, or Director, has submitted a statement regarding the scope of authority believed to have been delegated in § 3.321(b) when first promulgated in its current form in 1961. The Secretary also has not presented a VA Office of General Counsel interpretation supporting the view represented in his counsel’s briefing.
Rather, the deputy director of the Office of Regulation Policy and Management for the Department of Veterans Affairs submitted a statement to the effect that he understands that delegation of authority to award an extraschedular evaluation on a multiple-disability basis was not the intent behind § 3.321(b), and he is working on a rewrite of the regulation to make it clear that an extraschedular evaluation on a multiple-disability basis is not authorized. With due respect, the statement submitted is more persuasive of an effort to try and change the regulation (unsuccessfully to date, see supra note 4) than to clarify it, and, in any event, is not persuasive in light of the regulation’s plain language, and the other factors discussed throughout my dissent.
Similarly, even assuming arguendo that there is a “current” practice of excluding extraschedular consideration for veterans with earnings impairment due to collective disabilities, such a practice cannot serve to change a regulation where the regulation plainly states the opposite. There are specific publication and opportunity-to-be-heard requirements associated with modifying a regulation. 38 U.S.C. § 501 (VA rulemaking authority); see also 5 U.S.C. § 553(b) and (c) (expounding upon specific publication and opportunity-to-be-heard requirements associated with modifying a *261 regulation). Until such proper modification is undertaken, the regulation plainly authorizes extraschedular consideration on the total disability picture arising from all of a veteran’s disabilities.
A proper analysis of § 8.821(b) and any VA practice also must keep in perspective the fact that the authority delegated in § 3.321(b) to the USB or Director is intended to be exercised in the exceptional case — where there is an exceptional or unusual disability picture such that the general rating schedule is inadequate to compensate for the average earning capacity impairment due to the disability or disabilities. Accordingly, the lack of a current practice or recollection of awarding extras-chedular consideration for collective disabilities might be a result of the fact that exceptional cases are by definition rare.
Thus, in the context of extraschedular evaluation intended for the exceptional or unusual case, VA practice in actually awarding an extraschedular evaluation, whatever it might be, is not very helpful in trying to determine the scope of § 3.321(b) and whether it includes authority for the USB or Director to grant an extraschedu-lar rating to a veteran suffering from multiple disabilities that might individually be adequately contemplated by the general rating schedule, but collectively result in a disability picture that fails to adequately compensate for the average earning capacity impairment due to those disabilities. Accordingly, the contention of Secretary’s counsel in his briefing that the Secretary’s practice reflects a grant of authority in § 3.321(b) limited solely to individual-disability consideration is not persuasive.

Judicial Sanction

The Secretary’s briefing also argues that this Court has sanctioned a practice of the Board referring cases for extraschedular consideration based only on earnings impairment due to a single disability, because the word “disability” — and not “disabilities” — was used in Thun, 22 Vet.App. at 115. The briefing also suggests that Thun’s identification of a three-step analysis for determining whether referral for extraschedular consideration is warranted indicates that such consideration is limited to individual-disability evaluation. These arguments are misplaced; Thun involved a single disability, and the issue of whether § 3.321(b)(1) envisions potential awards of extraschedular consideration based on cumulative disabilities that was not before, and not addressed by, the Court in Thun.
Moreover, although counsel for the Secretary and the majority are correct that the Court has never explicitly adopted the view expressed by Judge Steinberg in his separate statement in Brambley v. Principi, 17 Vet.App. 20, 24 (2003) (noting that § 3.321(b)(1) envisions extraschedular consideration on a cumulative-disabilities basis), the Court has never expressed disagreement with it either. Indeed, the majority in Brambley expressed no disagreement with Judge Steinberg’s view, and, in fact, noted that an extrasehedular-evaluation adjudication, like an adjudication for TDIU, “require[s] a complete picture of the appellant’s service-connected disabilities and their effect on his employ-ability.” 17 Vet.App. at 26. Also, in Vazquez-Flores v. Shinseki, 24 Vet.App. 94, 108 (2010), in the context of not finding Board error as to denial of referral for extraschedular consideration for an individual disability, the Court remanded that matter because the Board had erred in denying service connection for another disability. Although not explicitly stated, the action taken in Vazquez-Flores indicates an understanding that, if the second disability were granted service connection on remand, consideration of an extrasche-dular evaluation might be warranted based on both disabilities, and remand on that issue also was warranted so the Board could address it as needed.
*262 Regardless of the lack of explicit case-law on the issue, it is clear that when a claimant requests referral for an extras-chedular evaluation, or the record evidence reasonably raises possible entitlement to such referral, the Board is required to address whether referral for an extrasche-dular evaluation is warranted on both an individual- and collective-disability basis, and, if not referred, provide the reasons or bases for the non-referral decision.

Inability to Implement

The Secretary’s briefing also asserts an inability to implement extraschedular evaluation consideration on a multiple-disability basis, but this argument is perplexing. The Secretary routinely adjudicates possible entitlement to TDIU, whether predicated on an individual- or collective-disability basis. There is no reason why he cannot do so for extraschedular evaluation.
Indeed, the Court has noted the similarities in the two evaluations and the fact that both are predicated on a complete picture of a veteran’s service-connected disabilities and their effect on employment. See Brambley, 17 Vet.App. at 24. Compare 38 C.F.R. § 4.16 (2012) (TDIU predicated on inability “to secure or follow a substantially gainful occupation”), with § 3.321 (extraschedular’ consideration authorized when there is “marked interference with employment” such that the general rating schedule does not compensate for “average earning capacity impairment”). Moreover, although the two are not inextricably intertwined in all cases, a remand for further development and adjudication of TDIU can warrant remand on the issue of an extraschedular rating.[15] See Brambley, supra. This is because both are predicated on the veteran’s complete disability picture, with a focus on occupational difficulties, although an award of TDIU involves a higher degree of occupational difficulty (“unemployability”). Id.
Accordingly, there should be no concern that the rating officials, Board, USB, or Director — all of whom assess the complete disability picture when evaluating TDIU— lack the ability to assess whether a disability picture arising from collective disabilities is exceptional or unusual as reflected by the governing norm of a marked interference on employment or frequent hospitalization, such that the schedule does not accord justice to the veteran. To the extent needed, I have every confidence that the Secretary and Board Chairman could provide the necessary training to accomplish the task.
In sum, although implementation impossibility can be a basis for rejecting the plain-language reading of the Secretary’s regulation, this is not a case where implementation is impossible or so difficult as to be effectively impossible. See Vermiglio v. Group Health Plan, Inc., No. 4:07ev0282TCM, 2008 WL 4402227, at *7 (E.D.Mo.2008) (“[A]ny difficulty in implementing the regulation [does not] confer a different meaning than the one made plain by the language of the regulation.”); Abdel-Fattah v. Comm’r Internal Revenue, 134 T.C. 190, 209, 2010 WL 1687673 (2010) (“If the rule that Congress enacted ... is problematic [or difficult to implement], then the problems can be addressed not by corrective interpretation but only by legislative amendment.”).

Challenging Final Decisions and Conflating Extraschedular Consideration and TDIU

The Secretary’s briefing also expressed concern that rejecting a narrow view of the *263 authority delegated in § 3.321(b) might result in (1) numerous challenges to final decisions that have denied referral for an extraschedular evaluation under § 3.321(b) based on a misreading of the regulation and (2) extraschedular consideration under § 3.321(b)(1) being conflated with TDIU under § 4.16. As to the first contention, unappealed VA decisions generally are final unless (1) a claim is reopened by the submission of new and material evidence or (2) there is clear and unmistakable error (CUE) in the decision, which is demonstrated by a claimant’s showing an unde-batable error, the correction of which would manifestly change the outcome. See, e.g., DiCarlo v. Nicholson, 20 Vet.App. 52, 55 (2006) (noting that res judicata “requires that there be only one valid decision on any issue or claim” and that exceptions to the rule of finality include a motion for revision on the basis of CUE, Board reconsideration, Board correction of obvious errors sua sponte, and reopening the claim based on new and material evidence); Russell v. Principi, 3 Vet.App. 310, 313 (1992) (en banc) (“[c]lear and unmistakable error ... must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made.” (internal quotation marks omitted)).
Moreover, duty-to-assist failures, including the failure to properly develop a claim, do not constitute CUE, see Szemraj v. Principi, 357 F.3d 1370, 1375-76 (Fed.Cir.2004) (failure to assist in developing evi-dentiary record cannot constitute CUE); Cook v. Principi, 318 F.3d 1334, 1341 (Fed.Cir.2002) (breach of duty to assist cannot constitute CUE), and an award based on a reopened claimed has an effective date tied to the date of the claim to reopen, 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400 (2012). Accordingly, the Secretary’s concern that there would be numerous successful challenges to final decisions is unfounded. On the other hand, should the high standard of CUE be met or new and material evidence submitted, setting aside finality or reopening the claim would be consistent with — indeed, in full compliance with — congressional direction, and, in that context, the justice envisioned by § 3.321(b)(1) would be accorded.
The Secretary’s second contention — that a delegation of authority to the USB or Director to grant an extraschedular rating on a multiple-disability basis essentially conflates extraschedular consideration with TDIU — is a red herring. The regulations and caselaw are clear that TDIU and ex-traschedular evaluation consideration have separate criteria. Extraschedular consideration is available when a veteran’s service-connected disabilities have, inter alia, a marked interference with employment such that the schedular ratings are not adequate, and TDIU is available when the veteran essentially is unemployable (i.e., “unable to secure or follow a substantially gainful occupation”) as a result of his service-connected disabilities. See Kellar, 6 Vet.App. at 162; Stanton v. Brown, 5 Vet.App. 563, 564-70 (1993) (issue of extras-chedular evaluation is separate from issue of TDIU rating); 38 C.F.R. §§ 3.321(b), 4.16; see also 38 C.F.R. §§ 4.1, 4.2 (2012), 4.10 (2012).[16]

*264
Application to the Present Case

Mr. Johnson has multiple service-connected disabilities, including rheumatic heart disease and a right-knee disorder, for which he was denied referral for ex-traschedular consideration on an individual basis. The Board remanded a claim for an increase in disability compensation for his left knee because treatment records addressing Mr. Johnson’s left knee were not previously considered by the VA RO, and the Board also remanded the issue of TDIU on a collective disability basis. In that context, and because 38 C.F.R. § 3.321(b) provides for extrasche-dular consideration on a collective, as well as individual, disability basis, the Board also should have remanded for further adjudication the issue of entitlement to an extraschedular evaluation on a collective disability basis. 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995) (Board’s statement “must be adequate to enable a claimant to understand the precise basis for the Board’s decision, as well as to facilitate review in this Court”); Schafrath v. Derwinski, 1 Vet.App. 589 (1991) (Board must consider and discuss all applicable provisions of law and regulation where they are made “potentially applicable through the assertions and issues raised in the record”).
The Board’s error warrants either modification of the Board’s decision to reflect a remand for the RO to consider referral for an extraschedular evaluation on a multiple-disability basis, or a remand of the matter so that the Board can modify its decision to reflect a remand for the RO to consider referral for an extraschedular evaluation on a multiple-disability basis. 38 U.S.C. § 7252 (Court can, inter alia, modify Board decisions).
II. SECOND ERRONEOUS CONCLUSION
The majority find error in the fact that the Board did not “discuss whether the rating schedule criteria regarding instability and limitation of flexion or extension reasonably describe Mr. Johnson’s right knee disability.” Ante at 246. Compare Thun, 22 Vet.App. at 115 (discussing three steps for analyzing if referral for an ex-traschedular disability rating is warranted), with Anderson v. Shinseki, 22 Vet.App. 423, 427 (2009) (clarifying that, although the Court in Thun identified three “steps,” they can be treated as necessary “elements” for an extraschedular rating). Although the majority also find no prejudice arising from this purported error, I raise the matter to note that there is no legal requirement that the Board address step one — or element one — of the Thun/ Anderson analysis in order to provide the statutorily required reasons or bases for its decision. The legal requirements with regard to the Board’s statement are that the Board (1) address the material issues raised by the appellant or reasonably raised by the evidence, Robinson v. Peake, 21 Vet.App. 545, 552 (2008), (2) explain its rejection of materially favorable evidence, Thompson v. Gober, 14 Vet.App. 187, 188 (2000), (3) discuss potentially applicable laws, Schafrath, supra, and (4) otherwise provide an explanation for its decision that is understandable and facilitative of judicial review, Allday, supra, To hold otherwise puts form over substance, and can exacerbate the “hamster wheel reputation of veterans law.” Massie v. Shinseki, 25 Vet.App. 123, 128 (2011).
Pursuant to Thun, referral for an ex-traschedular disability rating is not warranted if the rating schedule contemplates the veteran’s disability picture, which Thun refers to as step one. 22 Vet.App. *265 at 115-16. However, referral also is not warranted if the veteran’s disability picture is not exceptional or unusual, with the governing norm being whether there is a marked interference with employment or frequent hospitalization, which Thun refers to as step two. Id.; see also Anderson, supra (noting that the steps are, in fact, elements); 38 C.F.R. § 3.321(b). Thus, although the majority purport to find error because the Board did not discuss Thun’s step one, their assertion of error is overstated, as evidenced by the fact they subsequently find no prejudice because Mr. Johnson did not demonstrate that the Board’s analysis of Thun’s step two was in error — a finding the majority could not make if there was a legal or otherwise necessary reason to mandate discussion of Thun step one before rendering a decision on whether referral for ex-traschedular consideration is warranted. See Sanchez-Benitez v. Principi, 259 F.3d 1356, 1363 (Fed.Cir.2001) (noting that “it is not the role of the Veterans Court” to find “on its own” that a disability was not “exceptional or unusual” under 38 C.F.R. § 3.321(b)(1)).
In sum, the Board’s statement of reasons or bases for denying referral for ex-traschedular consideration on an individual disability basis for rheumatic heart disease and a right-knee disability is fully understandable and facilitative of judicial review, and comports with all legal requirements. See Allday, supra,
III. CONCLUSION
Accordingly, I would modify the Board decision to reflect a remand for the RO to consider referral for an extraschedular evaluation on a multiple-disability basis, or set aside the Board decision and remand for the Board to modify its decision to reflect a remand for the RO to consider referral for an extraschedular evaluation on a multiple-disability basis. That part of the Board decision otherwise on appeal I would affirm.

. I also note that the majority gratuitously and favorably cite Medrano v. Nicholson, 21 Vet.App. 165, 170 (2007) in note 1, ante at 239, for the proposition that the Court "cannot disturb” a finding favorable to a veteran. Although Medrano is quoted correctly, the concept that the Court "cannot disturb” a favorable finding is dictum, and appears to misstate the law. The plain language of 38 U.S.C. § 7261(a)(3) authorizes the Court to "set aside ... findings (other than those described in clause (4) of this subsection,” i.e., "findings of material fact adverse to the claimant ") that are, inter alia, "arbitrary, capricious,” "contrary to constitutional right,” "in excess of statutory jurisdiction,” or "without observance of procedure required by law.” 38 U.S.C. § 7261 (emphasis added).

. Tellingly, counsel for the Secretary did not submit a statement from the USB or the Director, or the Secretary for that matter, regarding the scope of authority delegated in § 3.321(b). For whatever reason, the only statement submitted is one from the deputy director of the Office of Regulation Policy and Management for the Department of Veterans Affairs (Deputy Director) — the person responsible for redrafting the regulations. See also infra note 4.

. Although a children’s story, "The Emper- or's New Clothes” — which involves an emper- or and many of his citizens being talked into believing he was wearing a beautiful new set of clothes, when he wore none at all — is well cited as an example of people believing something to be fact that is not. See, e.g., Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 631 (6th Cir.2002) (using "Emperor’s New Clothes” analogy); see also Hans Christian Andersen, The Complete Andersen (Jean Hersholt trans., Heritage Press 1949), available at http://www. anderson.sdu.dk/vaerk/hershold/TheEmperors NewClothes_e.html.

. The Deputy Director filed a statement with the Secretary's first supplemental memoran-da. The Deputy Director’s statement reflects that official’s understanding of a longstanding interpretation that extraschedular evaluation was limited to an individual disability assessment and that official’s current effort to change the regulation to make it clear that the USB and Director do not have the authority to grant an extraschedular evaluation on a multiple disability basis. Although I do not question the Deputy Director’s understanding of the interpretation of the regulation and how it might have been interpreted over time, it is the opinion of the USB, Director, or general counsel, or evidence of a consistent application of that interpretation, that should have been provided, and is notably absent. Cf. Amanfi v. Ashcroft, 328 F.3d 719, 720 (3d Cir.2003) (noting that the Attorney General is statutorily the ultimate authority on interpretations of the Immigration and Nationality Act (citing 8 U.S.C. § 1103)); Vons Cos. v. United States, 51 Fed.Cl. 1, 21 (2001) (stating that the "court [should be] extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency”). Of equal note, although the Secretary certainly has the authority to change his regulation, no substantive change has taken place over the past half-century, and, is now only taking place as a result of today’s majority decision.

. Noting that the Secretary has not limited the authority of the USB or Director is not a suggestion that he should do so. Indeed, upon issuance of today's decision, the Secretary promptly should change the position espoused by his counsel and ensure that veterans suffering from multiple disabilities and a combined effect beyond that associated with each individual disability are considered for an extraschedular rating based on the collective disability effect on their employability and earnings capacity. Our veterans’s sacrifices demand no less from a grateful Nation.

. In contrast, remand for development and adjudication of possible entitlement to an ex-traschedular evaluation generally does not warrant remand for TDIU. Kellar v. Brown, 6 Vet.App. 157, 162 (1994).

. Of course, there are similarities in the criteria for each benefit, such that the record evidence in a case might, and frequently will, require discussion of both. See Thun, 22 Vet.App. at 117 (noting that marked interference with employment as required for extraschedu-lar consideration is a lesser standard to meet than TDIU, which refers to obtaining or retaining employment in general); Brambley, supra; see also VAGen. Coun. Prec. 6-1996 (Aug. 16, 1996) (recognizing the possibility that circumstances may require a discussion of both extraschedular consideration and enti- *264 dement to TDIU) (citing Moyer v. Derwinski, 2 Vet.App. 289, 293 (1992)).