NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDWARD L. BRYCE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1178

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-2783, Judge Coral Wong Pietsch.

---

Decided: July 7, 2021

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, for claimant-appellant.

JOHN MCADAMS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, DEREK

SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, CLEVENGER, and PROST*, *Circuit Judges.*

PROST, *Circuit Judge.*

Edward L. Bryce appeals a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals ("Board") decision denying him an earlier effective date for his total disability based on individual unemployability ("TDIU"). We affirm.

## BACKGROUND

Mr. Bryce served on active duty in the U.S. Marine Corps from April 1961 to January 1965. In 1971, he filed a formal claim for compensation for back pain resulting from an injury he sustained while on active duty. The Department of Veterans Affairs ("VA") granted him service connection for chronic low back strain associated with scoliosis and assigned him a 20% disability rating effective March 17, 1971.

On November 18, 1976, Mr. Bryce filed a claim for an increased rating for his service-connected back disability and sought reevaluation of his back. Mr. Bryce's claim also stated that he had been unable to work since reinjuring his back in February 1973 and that he "ha[d] other evidence to support [his] case." J.A. 29–31. On December 3, 1976, the VA mailed Mr. Bryce a letter stating that "[r]eevaluation of your service-connected disability will be considered as soon as additional medical evidence is submitted in support of your claim." J.A. 32. Mr. Bryce did not submit additional evidence or otherwise respond.

———————————

\*    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

More than twenty years later, in May 1997, Mr. Bryce submitted a claim for an increase in his back-disability rating. The VA denied this claim in December 1997, continuing his 20% rating. In September 2001, Mr. Bryce submitted another claim for an increase in his back-disability rating. The VA increased his back-disability rating from 20% to 40% with an effective date of September 13, 2001.

On May 12, 2006, Mr. Bryce filed another claim for an increase in his back-disability rating. In October 2006, although the VA continued Mr. Bryce's 40% back-disability rating, it granted a 30% disability rating for a mood disorder, a 10% disability rating for peripheral neuropathy in the right lower extremity, and a 10% disability rating for peripheral neuropathy in the left lower extremity. As a result, Mr. Bryce's combined disability rating was 70%.[1]

In November 2006, Mr. Bryce filed a claim for TDIU, citing his back disability as preventing him from securing or following any substantially gainful occupation. The VA denied the claim. Mr. Bryce filed a notice of disagreement with that decision and, in November 2010, he was granted TDIU with an effective date of May 12, 2006—the date he met so-called schedular requirements for TDIU (i.e., multiple disabilities with a combined rating of 70% or more, at least one of which is rated 40% or more). *See* 38 C.F.R. § 4.16(a). Mr. Bryce did not file a notice of disagreement with that November 2010 decision, and it therefore became final. *See* 38 U.S.C. § 7105(c).

On November 7, 2012, Mr. Bryce (through counsel) sent the VA a letter styled as a "formal demand for the

---

[1]    Disability ratings are not additive and are calculated using the VA's combined ratings table. 38 C.F.R. § 4.25. Therefore, Mr. Bryce's combined rating is less than the sum of his individual disability ratings.

adjudication of [a] pending informal claim for an extra-schedular [TDIU] rating submitted by Mr. Bryce on November 18, 1976." J.A. 85. The letter stated that, on that date, Mr. Bryce "in writing communicated to the VA his belief in his entitlement to an extra-schedular [TDIU] rating" by "specifically indicat[ing] that he had been unable to work a job" since February 1973. J.A. 85. In Mr. Bryce's view, this informal claim remained pending, and he therefore "demand[ed] that the VA adjudicate" it. J.A. 85. On October 10, 2013, the VA denied Mr. Bryce an earlier effective date for his TDIU.

Mr. Bryce appealed to the Board. The Board found that Mr. Bryce's November 1976 informal TDIU claim was abandoned because he failed to respond to the VA's December 1976 follow-up letter. The Board also determined that Mr. Bryce was not otherwise entitled to an earlier effective date for his TDIU. It reasoned that because Mr. Bryce did not appeal the November 2010 decision—which granted TDIU with an effective date of May 12, 2006—that decision, along with its effective-date determination, became final. And, because Mr. Bryce did not allege any clear and unmistakable error in that decision, there was no basis to upset the finality of that effective-date determination.

Mr. Bryce appealed to the Veterans Court. The Veterans Court assumed for argument's sake that Mr. Bryce's November 1976 informal TDIU claim was *not* abandoned but nonetheless determined that the claim was no longer pending. Applying precedent from both the Veterans Court and this court, it concluded that "Mr. Bryce's pending and unadjudicated claim for TDIU benefits was extinguished when [the] VA adjudicated TDIU in November 2010." *Bryce v. Wilkie*, No. 17-2783, 2019 WL 2509025, at *3 (Vet. App. June 18, 2019). "Because [the November 2010] decision adjudicated TDIU, it terminated any prior pending claim for TDIU benefits." *Id.* (first citing *Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008); and then citing *Ingram v. Nicholson*, 21 Vet. App. 232, 243 (2007)). And

because Mr. Bryce did not appeal the November 2010 decision, that decision became final.  Accordingly, absent some exception to finality (which Mr. Bryce did not supply), there was no basis for assigning an earlier effective date for his TDIU.  *See id.* at \*3–4.

After the Veterans Court denied Mr. Bryce's motion for reconsideration, he timely appealed to this court.

## DISCUSSION

We have limited jurisdiction to review decisions of the Veterans Court.  Except to the extent that an appeal presents a constitutional issue, we may not review "a challenge to a factual determination" or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).  We may, however, decide "all relevant questions of law," *id.* § 7292(d)(1), and we have exclusive jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision," *id.* § 7292(c).  We review the Veterans Court's legal determinations de novo.  *Beraud v. McDonald*, 766 F.3d 1402, 1405 (Fed. Cir. 2014).

The VA regulation governing TDIU states:

(a) Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected  disabilities: *Provided  that*,  if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. . . .

> (b) It is the established policy of the [VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in [subsection] (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

38 C.F.R. § 4.16. As reflected above, subsections (a) and (b) each provide a path to TDIU. Subsection (a)—referred to as governing "schedular" TDIU—conditions TDIU on a claimant's having certain disability ratings. Subsection (b)—referred to as governing "extra-schedular" TDIU—allows for TDIU under certain circumstances even if the claimant does not have the disability ratings specified in subsection (a).

Mr. Bryce argues that the Veterans Court legally erred in concluding that the VA's 2010 final adjudication of his November 2006 TDIU claim terminated his pending November 1976 informal TDIU claim.[2] According to Mr. Bryce, his November 1976 informal claim was made under § 4.16(b) because at that time he had not met the "schedular" requirements of § 4.16(a). And he maintains

---

[2]    Like the Veterans Court, we assume for argument's sake that Mr. Bryce's November 1976 informal TDIU claim remained pending, even though the Board found it was abandoned. *See Bryce*, 2019 WL 2509025, at *3.

that the two subsections of § 4.16 provide for two separate types of claims, such that the 2010 TDIU grant on the "schedular" basis of subsection (a) did not terminate his claim for entitlement on the "extra-schedular" basis of subsection (b).

We agree with the Veterans Court, however, that the VA's 2010 final adjudication of Mr. Bryce's November 2006 TDIU claim terminated his pending November 1976 informal TDIU claim. The Veterans Court reached this result by relying on *Williams v. Peake*, 521 F.3d 1348 (Fed. Cir. 2008). In *Williams*, we held that "a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim." *Id.* at 1351. "The later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail."[3] *Id.* This implicit-denial rule "reflects an appropriate balance between the interest in finality and the need to provide notice to veterans when their claims have been decided." *Adams v. Shinseki*, 568 F.3d 956, 963 (Fed. Cir. 2009).

The circumstances here fit within the implicit-denial rule articulated in *Williams*. A claim for TDIU is a claim for a 100% disability rating due to unemployability. *See Comer v. Peake*, 552 F.3d 1362, 1366–67 (Fed. Cir. 2009); *Rice v. Shinseki*, 22 Vet. App. 447, 451–53 (2009) (observing that the benefit sought is "a disability rating of 100%" and that an assertion of entitlement to TDIU based on an existing service-connected disability "is best analyzed as a

---

[3] Although *Williams* involved termination of an earlier pending claim by a subsequent *denial* of a sufficiently related claim, a subsequent *grant* (such as that here) can have the same effect. *See Deshotel v. Nicholson*, 457 F.3d 1258, 1261 (Fed. Cir. 2006) (referencing "favorabl[e] or unfavorabl[e]" decisions); *see also Jones v. Shinseki*, 619 F.3d 1368, 1372 (Fed. Cir. 2010).

claim for an increased disability rating based on unemploy-ability"). Mr. Bryce concedes that what is sought under § 4.16(a) and (b) is the same—namely, a 100% disability rating due to unemployability. *See* Reply Br. 9. When the VA finally adjudicated Mr. Bryce's November 2006 TDIU claim in 2010, granting him TDIU effective May 12, 2006, it implicitly denied Mr. Bryce's earlier, pending claim for that same benefit. *See, e.g.*, *Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009) ("[W]hen the substance of a later-filed claim is addressed in [a VA regional office ("RO")] decision, the claimant can infer that the earlier-filed claim based on the same disability has also been adjudicated.").

Resisting this conclusion, Mr. Bryce relies heavily on the different adjudicators involved as between § 4.16(a) and (b). In particular, Mr. Bryce argues that § 4.16(a) and (b) provide for "separate and distinct TDIU claim[s]" because, unlike § 4.16(a), in which an RO might award TDIU in the first instance, under § 4.16(b) the Director, Compensation Service adjudicates the claim. But even if we assumed that this difference mattered for implicit-denial purposes here, Mr. Bryce glosses over the fact that under § 4.16(b) the RO decides whether a claim warrants referral to the Director in the first place. *See Thun v. Shinseki*, 572 F.3d 1366, 1370 (Fed. Cir. 2009). We see no reason why the VA's providing two paths to the same TDIU benefit—both running through an RO—should produce a different result under *Williams* here, or why the later adjudication of TDIU would fail to give sufficient notice that Mr. Bryce's earlier, pending claim for that same benefit was denied.

## CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm.

## **AFFIRMED**

BRYCE v. MCDONOUGH                                             9

COSTS

No costs.