Citation Nr: 1602931 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 05-26 164 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to an initial rating greater than 10 percent for left hip osteoarthritis.

2. Entitlement to an initial compensable rating for chronic vasomotor rhinitis, previously characterized as chronic sinusitis. 


ATTORNEY FOR THE BOARD

M. Carsten, Counsel


INTRODUCTION

The Veteran served on active duty from August 1977 to February 2000. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2003 rating decision by the Department of Veterans Affairs (VA) Regional Office in Washington, DC. The appeal was certified to the Board by the RO in Pittsburgh, Pennsylvania. 

In August 2007, the Board granted a compensable rating for hypertension and that issue is no longer for consideration. The Board also remanded the listed issues. 

In August 2014, the RO furnished a statement of the case addressing service connection for a right thigh disorder and for migraine headaches. A VA Form 9 was not received and these issues are not for consideration. 

In January 2016, and following substantial compliance with the remand directives, the appeal was returned to the Board. 

This is a paperless appeal and the Veterans Benefits Management System (VBMS) and Virtual VA folders have been reviewed. 


FINDINGS OF FACT

1. The Veteran's left hip osteoarthritis is not manifested by thigh flexion limited to 30 degrees or abduction lost beyond 10 degrees. 

2. Resolving reasonable doubt in the Veteran's favor, the disability picture pertaining to his chronic sinusitis and/or rhinitis more nearly approximates allergic or vasomotor rhinitis without polyps, but with greater than 50-percent obstruction of nasal passage on both sides or complete obstruction on one side. 


CONCLUSIONS OF LAW

1. The criteria for an initial rating greater than 10 percent for left hip osteoarthritis are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5252, 5253 (2015). 

2. The criteria for an initial 10 percent rating, and no more, for chronic vasomotor rhinitis, previously characterized as chronic sinusitis, are met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.3, 4.7, 4.97, Diagnostic Code 6522 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A (West 2014) have been met. The appeal issues are downstream and by correspondence dated in December 2002 and December 2007, VA has notified the Veteran of the information and evidence needed to substantiate a claim, to include notice of what part of that evidence is to be provided by the claimant and notice of what part VA will attempt to obtain. He has also been advised as to how VA assigns disability ratings and effective dates. The appeal issues were most recently readjudicated in the August 2014 supplemental statement of the case. 

VA has also satisfied its duty to assist. The claims folder contains available and identified service and post-service treatment records. The Veteran was provided examinations throughout the appeal period, most recently in January 2011, and collectively, the examinations are considered adequate. 

In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159 (2015). 

Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule), found in 38 C.F.R. Part 4. Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Staged ratings are appropriate for any rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

 Left hip osteoarthritis

In February 2003, the RO granted service connection for left hip osteoarthritis and assigned a 10 percent rating from June 3, 2002. The Veteran disagreed with the rating and perfected this appeal. 

Degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Code 5003. When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. 

For VA purposes normal hip flexion is from 0 to 125 degrees. Normal hip abduction is from 0 to 45 degrees. 38 C.F.R. § 4.71a, Plate II (2015). 

Limitation of flexion of the thigh is rated as follows: flexion limited to 10 degrees (40 percent); flexion limited to 20 degrees (30 percent); flexion limited to 30 degrees (20 percent); and flexion limited to 45 degrees (10 percent). 38 C.F.R. § 4.71a, Diagnostic Code 5252.

Impairment of the thigh is rated as follows: limitation of abduction of, motion lost beyond 10 degrees (20 percent); limitation of adduction of, cannot cross legs (10 percent); and limitation of rotation of, cannot toe-out more than 15 degrees, affected leg (10 percent). 38 C.F.R. § 4.71a, Diagnostic Code 5253. 

VA regulations, set forth at 38 C.F.R. §§ 4.40, 4.45, 4.59 provide for consideration of functional impairment due to pain on motion when evaluating the severity of a musculoskeletal disability. The United States Court of Appeals for Veterans Claims (Court) has held that a higher rating can be based on "greater limitation of motion due to pain on use." DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Any such functional loss must be "supported by adequate pathology and evidenced by the visible behavior of the claimant." See 38 C.F.R. § 4.40. 

On VA examination in January 2003, the Veteran reported constant pain in the left hip during prolonged standing or physical activities. He was taking prescription painkillers. As concerns the musculoskeletal system, the examiner indicated there were no functional effects. Specific range of motion or other findings were not reported as concerns the left hip. The examiner noted left hip pain - osteoarthritis of hip.

In his notice of disagreement, the Veteran reported continued left hip pain that has gradually worsened. He took painkillers daily and a simple walk in the park was painful. 

The Veteran underwent another examination in February 2005. He reported a painful left hip. On physical examination, the musculoskeletal system was reported as abnormal, which was described as left hip pain with range of motion. Diagnosis was osteoarthritis and he was started on Mobic. 

In an August 2007 statement, the Veteran reported his left hip had become extremely painful and that the only solution was a hip replacement at an older age. 

The Veteran most recently underwent a VA examination in January 2011. He reported weakness, stiffness, swelling, giving way, lack of endurance, locking and pain. He indicated that he did not experience heat, redness, fatigability, deformity, tenderness, drainage, effusion, subluxation or dislocation. He reported flare-ups when trying to do physical training and each time it lasted for one day. Flare-ups were precipitated by laying and sitting and were alleviated by rest and painkillers. During flare-ups he experienced a deep pain during cold weather and limitation of joint motion described as being unable to move or walk on the spur of the moment. He reported difficulty with standing or walking. His condition had not resulted in any incapacitation. He stopped running and started bicycling. On physical examination, the Veteran's posture was normal and he walked with a normal gait. Leg length from the anterior superior iliac spine to the medial malleolus was 91 cm on the right and 90 cm on the left. Examination of the feet did not reveal any signs of abnormal weight bearing or breakdown. He did not require any assistive device for ambulation. The left hip showed no signs of edema, instability, abnormal movement, effusion, weakness, tenderness, redness, heat deformity, malalignment, drainage, subluxation or guarding of movement. There was no ankylosis. Range of motion of the left hip was: flexion to 125 degrees; extension to 30 degrees with pain beginning at 30 degrees; adduction to 25 degrees; abduction to 30 degrees; external rotation to 60 degrees; and internal rotation to 40 degrees. Joint function on the left was not additionally limited by pain, fatigue, weakness, lack of endurance or incoordination after repetitive use. X-rays of the left hip were reported as unremarkable for patient age. Diagnosis was osteoarthritis of left hip. 

On review, the criteria for a 20 percent rating are not met or more nearly approximated. Evidence of record does not show flexion limited to 30 degrees or abduction lost beyond 10 degrees. In making this determination, the Board has considered the Veteran's statements regarding pain and functional limitations. The Veteran is competent to report his symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a lay person is competent to report on that of which he or she has personal knowledge). The Veteran's subjective complaints, however, do not outweigh the objective evidence and the Board does not find adequate pathology to support a higher rating based on functional impairment due to pain on motion or other factors. 

At no time during the appeal period has the Veteran's left hip disability been more than 10 percent disabling and staged ratings are not warranted. See Fenderson. 

 Chronic vasomotor rhinitis, previously characterized as chronic sinusitis

In February 2003, the RO granted service connection for chronic sinusitis and assigned a noncompensable rating. The Veteran disagreed with the decision and perfected this appeal. 

In the August 2014 supplemental statement of the case, the RO phrased the issue as "chronic vasomotor rhinitis (previously diagnosed as chronic sinusitis)". This was apparently based on the January 2011 finding that the Veteran did not have sinusitis detected on examination, but rather, had vasomotor rhinitis. The Veteran was shown to have sinusitis during the appeal period and the Board will consider the diagnostic codes relating to both sinusitis and rhinitis. 

The General Rating Formula for Sinusitis provides: following radical surgery with chronic osteomyelitis, or near constant sinusitis characterized by headaches, pain and tenderness of affected sinus, and purulent discharge or crusting after repeated surgeries (50 percent); three or more incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain and purulent discharge or crusting (30 percent); one or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting (10 percent); and detected by x-ray only (noncompensable). 38 C.F.R. § 4.97, Diagnostic Codes 6510 through 6514. Note to this formula states that an incapacitating episode of sinusitis means one that requires bed rest and treatment by a physician. Id. 

Allergic or vasomotor rhinitis is rated as follows: with polyps (30 percent); without polyps, but with greater than 50-percent obstruction of nasal passage on both sides or complete obstruction on one side (10 percent). 38 C.F.R. § 4.97, Diagnostic Code 6522. 

On VA examination in January 2003, the Veteran reported taking daily medication for his sinuses. Objectively, there was no sinus tenderness, septal deviation or exudates and the tonsils were normal. There was rhinorrhea. The examiner noted sinusitis with episodic recurrences on Flonase, Sudafed, Allegra, and Albuterol. Diagnosis was chronic sinusitis. 

In his notice of disagreement, the Veteran reported that he had been treated for a sinus condition for approximately 10 years and took numerous different types of medication just to be able to breathe and sleep every night. 

On examination in February 2005, the Veteran reported continued sinus problems. Objectively, the nose and sinuses were reported as abnormal with swollen turbinates. Diagnosis remained chronic sinusitis. 

The Veteran most recently underwent a VA examination in January 2011. He reported constant sinus problems. He was not incapacitated during these episodes, but experienced daily non-incapacitating episodes with headaches. He reported that antibiotic treatment lasting 4-6 weeks was needed and he reported interference with breathing through the nose, purulent discharge, hoarseness and crusting. He reported numerous medications including Allegra, Entex, Albuterol, Flonase, Afrin, Asian herbs and saline nasal spray. He also reported overall functional impairment in that he was constantly tired from lack of sleep, stuffiness, and being unable to breathe. Examination of the nose revealed nasal obstruction, 20 percent in each nostril. He did not have a deviated septum, loss of part of the nose or ala, scar, obvious disfigurement or nasal polyps. There were findings of inflamed, erythemic and boggy turbinates. There was rhinitis present, believed to be vasomotor in origin because symptoms were year round. No sinusitis was detected on examination and the sinus x-ray was within normal limits. For the claimed condition of chronic sinusitis, the diagnosis was chronic vasomotor rhinitis. There were no findings of bacterial rhinitis. 

On review, the Board finds that a compensable disability rating is not warranted under the Diagnostic Codes pertaining to sinusitis. While the Veteran is competent to report experiencing sinus symptoms and the need for antibiotics, there is no adequate pathology sufficient to support a finding of one or two incapacitating episodes or three to six non-incapacitating episodes per year of sinusitis. In this regard, there was no evidence of sinus tenderness on the January 2003 examination and on the most recent examination, the Veteran denied incapacitating episodes. The Board acknowledges his reports of constant non-incapacitating episodes, but notes the sinus x-ray was normal. 

In considering Diagnostic Code 6522, the Board acknowledges that the Veteran does not have polyps and the nasal obstruction is limited to 20 percent on each side. Nonetheless, findings of rhinorrhea were shown on the initial January 2003 examination and he is shown to have enlarged and inflamed turbinates with year round symptoms requiring the use of multiple medications. Resolving reasonable doubt in his favor, the Board finds that the overall disability picture due to chronic sinusitis and/or rhinitis more nearly approximates a 10 percent rating under Diagnostic Code 6522. A 20 percent rating is not warranted as there is no evidence of nasal polyps. 

At no time has the disability been more than 10 percent disabling and staged ratings are not warranted. See Fenderson.
 
Finally, the Board has considered whether the Veteran may be entitled to an extraschedular rating pursuant to 38 C.F.R. § 3.321 (2015). On review, the referenced diagnostic codes contemplate symptoms related to sinusitis and rhinitis and higher schedular ratings are available for greater levels of disability. As the rating criteria are considered adequate, referral for consideration of an extraschedular rating is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual condition fails to capture all the service-connected disabilities experienced. In addition to his left hip and sinusitis/rhinitis, the Veteran is service-connected for hypertension. The only issues being decided at this time are the evaluation for the left hip and sinusitis/rhinitis. Accordingly, those are the only disabilities that the Board has considered in the extraschedular analysis with respect to considering the collective impact of the disabilities. See id. 

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is part of a rating claim when unemployability is expressly raised by a veteran or reasonably raised by the record during the rating appeal. Evidence of record suggests the Veteran is currently gainfully employed and the Board declines to infer a claim for a TDIU. 


ORDER

An initial rating greater than 10 percent for left hip osteoarthritis is denied. 

An initial 10 percent rating, and no more, for chronic vasomotor rhinitis, previously characterized as chronic sinusitis, is granted, subject to the laws and regulations governing the award of monetary benefits. 




____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs